PIERCE OIL CORPORATION *v.* PARKER

Opinion delivered March 30, 1925.

HIGHWAYS—CONTRACTORS' BOND—LIABILITY FOR OIL AND GASOLINE.—
Under Crawford & Moses' Dig., § 5446, requiring road contractors to give bond to pay for labor and materials used in the prosecution of the work, persons supplying oils or gasoline to be used in operating motor trucks engaged in hauling stone for the construction of an improved highway cannot be said to be supply-

ing materials to be used in the prosecution of the work, and therefore are not within the protection of the bond.

Appealed from Logan Circuit Court, Northern District; *James Cochran*, Judge; affirmed.

### STATEMENT OF FACTS.

Pierce Oil Corporation brought this suit against R. C. Parker, C. R. Lowery and Road Improvement District No. 1 of Logan County, Arkansas, to recover the sum of $1,000 alleged to be due for materials furnished the defendants in constructing a hard road.

The record shows that Road Improvement District No. 1 was created under the general laws of the State of Arkansas for constructing a hard road between Paris and Roseville in Logan County, Arkansas. The board of commissioners of said district entered into a written contract with R. C. Parker for the construction of said road, and Parker executed the bond required by law for the faithful performance of his contract. Parker assigned an interest in his contract to C. R. Lowery. Subsequently R. C. Parker and C. R. Lowery entered into a written contract with John B. Stephens to haul all of the crushed stone to be used on said road at a stipulated price per cubic yard. Stephens hauled a large amount of stone which was used in the construction of said road in motor trucks, and bought from plaintiff the oil and gasoline which was used in operating said motor trucks.

According to the evidence of the plaintiff there was a balance due it by Stephens of $757 for oil and gasoline. According to the evidence for the defendants, Stephens only owed the plaintiff $577.

The circuit court was of the opinion that the defendants were not liable to the plaintiff for the oil and gasoline furnished by it to Stephens. Judgment was accordingly rendered in favor of the defendants, and the plaintiff has duly prosecuted an appeal to this court.

*Sam T. & Tom Poe*, and *Evans & Evans*, for appellant.

*White & White,* and *Carmichael & Hendricks,* for appellee.

HART, J., (after stating the facts). The Legislature of 1915 provided for the establishment of road improvement districts for the purpose of constructing improved roads, and § 5446 of Crawford & Moses' Digest is a part of that act. The section provides that all contractors shall be required to give bond for the faithful performance of such contracts as may be awarded to them, with good and sufficient security, in an amount to be fixed by the board of commissioners, and that said bond shall contain an additional obligation that such contractor or contractors shall promptly make payment to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract.

When the contract was awarded to R. C. Parker and C. R. Lowery for the construction of said improved road, they gave bond as provided in the section of the Digest just referred to.

Counsel for the plaintiff insist that the case is controlled by *Kotchtitzky* v. *Magnolia Petroleum Co.,* 161 Ark. 275. In it a similar section of the statute applying to drainage districts was construed. In that case the court held that one who undertakes to construct a drainage ditch impliedly contracts to pay for all labor done and materials furnished for that purpose, either to himself or to a subcontractor.

We do not regard that case as decisive of the present one. The facts in that case recited that the materials furnished were used in the construction of the improvement. The opinion does not state what the materials were, and the question under review in this case was not discussed or determined. The same thing may be said of the cases of *Oliver Construction Co.* v. *Williams,* 152 Ark. 414; *Arkansas Road Construction Co.* v. *Evans,* 153 Ark. 142; and *Gage* v. *Road Improvement Dist. No. 3,* 153 Ark. 321.

In *Oliver Construction Co.* v. *Erbacher,* 150 Ark. 549, it was held that, where a contractor agrees to be liable for all outstanding bills against a subcontractor "for work and labor and material, services done for and furnished to" the subcontractor, this did not bind the contractor to pay the meat bill of the subcontractor incurred in boarding employees.

Thus it will be seen that the question under consideration in this case has never been decided by this court. The general rule is that dynamite and other explosives used in breaking up earth which must be removed in the construction of roadbeds and embankments, are materials used within the meaning of a statute providing a mechanic's lien for the furnishing of such materials. In some of the cases it is said that, in a broad and practical sense, explosives so used might be said to partake of the nature of both materials and labor.

On the other hand there is a direct conflict in the authorities as to whether oil and coal used in operating road and dredging machinery and in trucks used in hauling earth and stone for constructing roads and levees are material within the meaning of the mechanics' lien statutes of the kind under consideration in this case.

On the one hand, the Supreme Courts of Minnesota, California, and other States have held coal and gasoline used for the generation of power in excavating earth to be materials furnished and lienable under statutes of this sort.

In *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal., app. 582, 163 Pac. 702, the Supreme Court of California held that, under its statute requiring contractors of public works to furnish bonds to pay for materials or supplies furnished, recovery may be had on the bonds for gasoline used in trucks to haul gravel, cement, etc., for road construction.

In *Johnson* v. *Starrett* 127 Minn. 138, 149 N. W. 6, L. R. A. 1915B, p. 708, under a similar statute, it was held that there was a lien for coal used in generating the steam power for a machine used in excavating and for

the gasoline used in motor trucks which carried the excavated earth away.

On the other hand, the Supreme Court of Massachusetts and the Court of Appeals of New York have decided the other way.

In *Shultz* v. *C. H. Quereau Co.*, 210 N. Y. 257, 104 N. E. 621, L. R. A. 1915E, 986, it was held that coal sold to a highway contractor and used to generate steam to propel road rollers and traction engines used on the contract is not within the operation of a statute giving a lien to any person furnishing material to a contractor for "the construction of a public improvement," upon the moneys due him by the State. To the same effect see *Thomas* v. *Commonwealth*, 215 Mass. 369, 102 N. E. 428.

It is worthy of note that these same courts held that there was a lien for dynamite employed directly to the earth which had to be removed. The reason was that it was an essential part of the construction to break up the earth, and dynamite used for that purpose entered primarily into the construction of the improvement. On the other hand, coal and oil, while used as fuel for portable engines and machinery used in construction work, are merely an incident in the operation of the machinery and partake of the same characteristic as it does. In other words, they are at least one step further removed from the actual work of construction and do not have any immediate connection with the structure at any time. In short, they are used in operating the tools and machinery which in their turn act upon the structure. Courts must stop somewhere in the construction of these statutes. Otherwise repairs on the machinery used in the construction of the improvement and the diminished value of the machinery and tools used in such construction will be deemed to be lienable claims. If matters which are only remotely connected with the construction of the public improvement should be held to be lienable, the protection of the bond to the class intended by the statute would be greatly impaired. To the same effect see *Alpena* v. *Title Guaranty & Surety*

*Co.,* (Mich.) 123 N. W. 1126; *Philadelphia* v. *Malone,* 214 Pa. 90, 63 Atl. 539; and *S. B. Luttrell & Co.* v. *Knoxville, L. & J. R. Co.,* 119 Tenn., 492, 105 S. W. 565.

It has also been held that lumber furnished for and used in making forms for a concrete structure as provided in the contract and specifications for its erection, and which is practically consumed and rendered valueless for such use is material, within the meaning of a mechanics' lien law, and of the provision of a bond given by a surety company that the contractor will "pay all the indebtedness incurred for labor and materials furnished and used in and about said contract work, or which might become the basis of a lien." *Chicago Lbr. Co.* v. *Douglas,* 89 Kan., 308, 131 Pac. 563, 44 L. R. A. (N. S.) 843; and *Avery* v. *Woodruff,* 144 Ky. 227, 137 S. W. 1088, 36 L. R. A. (N. S.) 866.

It is earnestly insisted by counsel for the plaintiff that this court should not follow the principles of law decided in the cases above cited and quoted from; but it should, for the sake of uniformity, at least, follow the decisions of the Supreme Court of the United States in construing a similar statute. We might adopt this course, but for the fact that this court has already taken a position in the construction of a similar statute of our own.

Sec. 5446 of Crawford & Moses' Digest provides in effect that contractors constructing improved highways shall be required to give bond for the faithful performance of their contracts, and that said bond shall contain an additional obligation that such contractor or contractors "shall promptly make payment to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contracts."

The Legislature of 1899 passed a statute providing that contractors and other designated persons, "who shall do or perform any work or labor, or cause to be done or performed any work or labor upon, or furnish any materials, machinery, fixtures or other things toward the building, construction or equipment of any railroad,"

etc., shall have a lien on the railroad for such labor, materials, etc. Acts 1899, p. 145. In construing this statute a lien was denied for articles furnished by a hardware company consisting of rope, block and tackle, chains, wheelbarrows, wedges, axes, blacksmith's outfits, such as forges, anvils and tools and sundry steel and tools such as are usually used in quarrying stone. The court held in effect that these articles were equipment merely, and for that reason were not lienable. In other words, the court held that under the statute there was no lien for anything beyond that which entered into or became a part of the roadbed.

Again in *St. L. I. M. & S. R. Co.* v. *Love,* 74 Ark. 528, the court held that there was no lien for the hiring of teams furnished by the claimant to a subcontractor for use in repairing the railroad. The reason again given was that the statute did not create a lien for anything beyond that which entered into and became a part of the railroad.

The object of statutes of the kind under consideration is to substitute the bond required for the security which the claimant might otherwise obtain under a mechanics' lien statute. The giving of the bond under the statute adds nothing to the obligation of the contractor. His liability is fixed by the terms of the statute. The contractor has supervision of the work, and it is easy for him to see what labor and materials are actually used in the work. *Oliver Construction Co.* v. *Williams,* 152 Ark. 414.

The provision of the bond upon which the claim of the plaintiff is based is the promise of the contractor to pay all persons supplying him with labor and materials in the prosecution of the work provided in the contract. The lien statute relating to railroads above referred to gave the contractor, and other named persons who should do any work or furnish any materials or other things towards the construction of the railroad, a lien. Therefore, it will be seen that the provisions of the two statutes are substantially the same.

It is to be presumed that the Legislature in passing the later statute had in mind the provisions of the earlier statute and the construction placed upon it by this court. Thus it will be seen that we have ruled that our statute giving a lien upon railroads for materials furnished should be limited to materials that are furnished for and used in the construction of the road, so as in a sense to become a part of it. Having regard then for the well-defined and established meaning of a similar statute, we think that the fair meaning of the language used in the statute under consideration is only to give persons a lien who supply materials directly used in the prosecution of the work or materials substantially consumed in the prosecution of the work and which are practically useless after such use.

Therefore, we do not think that oil or other fuels used in operating motor trucks engaged in hauling stone for the construction of an improved highway can fairly and justly be said to be supplying materials to be used in the prosecution of the work. As above stated, oil so used is only incidental to the operation of the motor trucks, and can be no more considered materials used in the prosecution of the work, than the motor trucks themselves or the repairs on them. The result of our views is that the judgment of the circuit court was correct, and must therefore be affirmed.