SOUTHERN SURETY CO. v. J. R. HOLDEN LAND & LUMBER CO. *

(Circuit Court of Appeals, Eighth Circuit. June 5, 1926.)

No. 7110.

**1. Courts ⬳366(1).**

Construction placed on state statute by Supreme Court of such state *held* binding on federal courts.

**2. Municipal corporations ⬳347(2).**

Under Crawford & Moses' Dig. Ark. § 6913, money loaned to street improvement contractor, though used to pay for material, cannot be basis of claim against surety on contractor's bond.

**3. Subrogation ⬳36—One loaning money to street improvement contractor has no equity in "percentages retained" by city superior to that of surety on contractor's bond (Crawford & Moses' Dig. Ark. § 6913).**

One loaning money to street improvement contractor has no equity superior to that of surety on contractor's bond, given under Crawford & Moses' Dig. Ark. § 6913, in "percentages retained" by city, even though money was used to pay for materials actually used in work.

**4. Municipal corporations ⬳347(2)—Materialman not entitled to have credits eliminated from account, though paid from proceeds of contractor's notes, which it indorsed and subsequently paid.**

Where materialman indorsed street improvement contractor's notes, proceeds of which were paid on its account, and subsequently paid the notes, it cannot, when denied precedence over contractor's surety in percentages retained by city for amount paid on the notes, have the credits eliminated from its account, but is only entitled to amount of account for materials less credits.

Appeal form the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit in the nature of a bill of interpleader by Street Improvement District No. 7 of the City of Newport, Ark., in which the Southern Surety Company and the J. R. Holden Land & Lumber Company interpleaded. From a decree allowing the claim of the latter, the former appeals. Remanded for further proceedings.

John W. Stayton, of Newport, Ark. (Thomas S. Buzbee, George B. Pugh, and H. T. Harrison, all of Little Rock, Ark., on the brief), for appellant.

Gustave Jones, of Newport, Ark., for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is an appeal from a decree allowing the claim of appellee for materials furnished as a charge against the bond given by appellant surety company and the contractor in connection with the improvement of certain streets in the city of Newport, Ark.

The short facts are as follows: Street improvement district No. 7 of the city of Newport, Ark., made a contract with Donathan & McClanahan for the improvement of certain streets in the city. In connection with the work, the contractor gave a bond executed by appellant surety company, conditioned for the performance of the contract and the discharge of all claims for work done and materials furnished in the prosecution of the work. The bond was given by virtue of section 6913, Crawford & Moses' Digest Statutes of Arkansas, 1921, which reads as follows:

"*Public Buildings.* Whenever any public officer shall, under the laws of this state, enter into a contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any public improvements, or constructing any public building, or making any repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Arkansas, in a sum not less than double the sum total of the contract, whose qualifications shall be verified, and such sureties shall be approved by the clerk of the circuit court in the county in which the property is situated, conditioned that such contractor or contractors shall pay all indebtedness for labor and material furnished in the construction of said public building, or in making said public improvements."

The contractor failed to perform its contract, and the surety company took over the work and completed it. Thereupon the street improvement district brought a suit in the nature of a bill of interpleader in the chancery court of Jackson county, Ark., against the contractor, the surety company, and a number of other defendants, setting forth the above facts, and that there remained in its hands the sum of $13,786.02, consisting of retained percentages, under said contract, and that this sum was claimed by the surety company in connection with the completion of the work, and also by the appellee and by various other parties who had furnished labor and material. The plaintiff asked that it be permitted to pay the money into court, and that the defendants be required to interplead.

The cause was duly removed by appellant to the United States District Court for the Eastern District of Arkansas, on the ground of diversity of citizenship and a sep-

*Rehearing denied November 15, 1926.

arable controversy with appellee. Motion to remand was made and denied; the plaintiff street improvement district was directed to pay the money in its hands into the registry of the court, and upon so doing to stand discharged of all liability. The appellee Holden Land & Lumber Company and others intervened, and set up their accounts.

The cause was tried, and the court decreed that appellee have judgment in the sum of $10,543.34 against appellant; that, upon payment of this sum to appellee and certain sums to other interveners, appellant should receive the balance of the moneys paid into court, and an assignment of a mortgage held by appellee which had been executed by the contractor.

The contest in the present appeal centers about an item of $10,000, "cash advanced for material," appearing in the account of appellee as a debit against the contractor. The facts in regard to this item, as disclosed in the record, are briefly as follows: The contractor in carrying out his contract became short of money, and a plan was devised by him and appellee to relieve the situation. The contractor made two promissory notes for $5,000 each, payable to appellee. These notes were indorsed by appellee, and discounted by the contractor at the First National Bank of Newport. Eventually appellee was compelled to take up the notes. From the proceeds of the notes, $6,000 was paid to appellee on account, and about $4,000 to the railroad company for freight charges on materials bought by the contractor from appellee. These freight charges were payable by appellee under the contract between it and the contractor, but the understanding was that the contractor should take up the freight bills in the first instance and then should receive credit therefor when presented to appellee.

These two items appear as credits in the account of appellee against the contractor— the former as cash received; the latter as equivalent to cash received by virtue of the agreement as to freight charges. As above stated, the item of $10,000 was entered as a debit in the account of appellee against the contractor.

The main question in the case is whether this item should stand as against the surety company. The answer to this question depends upon whether the item was one which came within the purview of the bond and the statute above quoted; in other words, whether this item of money could be included in the claim as "materials furnished" within the meaning of the statute. We assume that,

if the item was a valid claim against the surety company in behalf of the bank, it was also valid in behalf of appellee.

[1] The construction placed upon a state statute by the Supreme Court of the state is binding upon the federal courts. St. L. & S. F. R. Co. v. Quinette, 251 F. 773, 164 C. C. A. 7 (C. C. A. 8).

[2] No case has been cited, and we have found none, wherein the Supreme Court of Arkansas has passed upon the exact question, whether a party who loans to a contractor money to be used for the purpose of paying for materials has a claim therefor against the bond of the contractor. However, the Supreme Court of Arkansas in a number of cases has passed upon the liability of sureties on contractors' bonds under the statute above quoted and other similar statutes.

In Reiff v. Redfield School Board, 126 Ark. 474, 191 S. W. 16, a contractor had purchased certain brick for building a schoolhouse. The contractor died before the building was finished. The school board completed it. Some of the brick were not actually used in the building. In a suit by the school board against the bondsmen of the contractor, it was held that the liability on the bond was limited to the brick *actually used* in the construction of the building.

In Fidelity & Deposit Co. v. Bank, 120 Ark. 519, 179 S. W. 1019, a contractor borrowed money from the owner of the building being erected, and then failed to complete the building. The owner obtained an estimate from the architect of the amount then due the contractor, and applied the amount on the loan. The bonding company on the contractor's bond completed the building, and sued the owner for the amount of the architect's estimate which had been appropriated. Held, the bonding company could recover.

In Pierce Oil Corp. v. Parker, 168 Ark. 400, 271 S. W. 24, the Supreme Court of Arkansas, in construing a similar statute, held that a seller of oil and gasoline to a subcontractor, to be used in trucks hauling gravel for construction of a road, had no right of recovery on the bond of the contractor. The ground of the decision was that the oil so furnished could not fairly be said to be "materials to be used in the prosecution of the work."

In Heltzel Steel Form and Iron Co. v. Fidelity & Deposit Co., 168 Ark. 728, 271 S. W. 325, the Heltzel Company had sold to a contractor, for use in constructing certain roads, steel road rails, angle face rails, patented pedestals, flat stakes, and stake pull-

ers. The contractor became bankrupt, and suit was brought on his bond. Held, that there could be no recovery, since the material sold, while necessary in making the road, formed no part of it.

In view of the foregoing decisions, we think that, under the Arkansas statute above quoted, money loaned to a contractor, although used in paying for material, is not material directly used in the prosecution of the work, and cannot be made the basis of a claim against the surety on the contractor's bond. This conclusion is in accord with decisions in other jurisdictions.

In United States v. Rundle, 107 F. 227, 46 C. C. A. 251, 52 L. R. A. 505, the syllabus reads:

"Sureties on a bond of a contractor, conditioned for payment of persons supplying him with 'labor or materials,' are not liable to a bank which, under an arrangement to supply the contractor with funds, pays the time checks given the laborers and the orders given the materialmen; the same being indorsed merely as evidence of payment, without any assignments of the claims being made."

The court in its opinion said:

" * * * The protection afforded by the bond was to such only as might supply the contractor with labor and materials in the prosecution of his work. It did not extend to a bank which might lend money for the purpose of paying for such work and materials."

See, also, Cadenasso v. Antonelle, 127 Cal. 382, 59 P. 765.

[3] Not only does money thus furnished a contractor not fall within the purview of the bond statutes, but the party loaning the money has no equity superior to that of the surety on the contractor's bond in "percentages retained" by the owner of the construction.

The general rule is that the right of subrogation of a bonding company, acting as surety on a contractor's bond, which has completed the work of the defaulting contractor, relates back to the time of the original contract by the contractor, and is superior to the equity, if any, of a party loaning money to the contractor, even though the money loaned is used to pay for materials actually used in the work. Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Illinois Surety Co. v. City of Galion (D. C.) 211 F. 161; United States v.

D. L. Taylor Co. (D. C.) 268 F. 635, 645; Wasco County v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, L. R. A. 1918D, 732, Ann. Cas. 1918E, 656.

One reason given for the rule is that the party so loaning money to the contractor is a mere volunteer. Prairie State Bank v. United States, supra; Henningsen v. U. S. Fidelity & Guaranty Co., supra; First Nat. Bank of Auburn v. Pesha, 99 Neb. 785, 157 N. W. 924.

[4] It is suggested by appellee that, if the $10,000 item is eliminated from the debit side of the account, the items of $6,000 cash and approximately $4,000 for freight charges should be eliminated from the credit side of the account, and that the result would be the same as if all three were left in.

The suggestion appears plausible, but analysis shows that it is without merit. The liability of the surety company to appellee was limited to the amount owed by the contractor to appellee for materials which actually went into the work. The $10,000 item was not an item of materials furnished. It was not a proper item in the account. It therefore should be eliminated. But the items of $6,000 cash and $4,000 freight charges paid were actual payments to the appellee, credits to which the contractor was entitled, and therefore should remain in the account. The surety company was not legally interested in the source from which the funds came with which to make these payments. When the contractor received the proceeds of the notes from the bank, the money was his to deal with as he chose. And the fact that the money was raised by a plan which ultimately resulted in loss to appellee cannot change the actuality of the payments nor increase the liability of the surety company. These payments reduced the amount owing by the contractor to appellee *for materials*. That reduced amount was what the surety company contracted to see paid.

The court below by its decree awarded appellee $10,543.34. This was evidently arrived at by taking the balance of the account as shown by appellee, $12,326.56, and subtracting therefrom two items, $1,328 and $455.22. There is no challenge to the correctness of these items, and it is admitted that they were received by appellee subsequent to the last item in the account offered in evidence. Eliminating the $10,000 item from $10,543.34, a balance of $543.34 remains, which is the amount to which appellee is entitled with interest since November 26, 1923, at 6 per cent. per annum. For the amount thus computed, appellee should have preced-

ence over appellant in payment from the fund in court.

Owing to the unsatisfactory state of the record, it is not feasible for us to adjudicate what rights, if any, appellee has under its mortgage mentioned in its cross-bill. The cause is therefore remanded to the trial court for further proceedings not inconsistent with the views herein expressed. Costs are allowed in favor of appellant.