## STANDARD OIL CO. (Indiana) v. FEDERAL SURETY CO.

Circuit Court of Appeals, Eighth Circuit.
September 17, 1928.

No. 8035.

William B. Bostian, of Kansas City, Mo. (R. R. Brewster, of Kansas City, Mo., on the brief), for appellant.

David A. Murphy, of Kansas City, Mo. (John T. Harding and R. C. Tucker, both of Kansas City, Mo., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is an appeal from a decree disallowing the claim of appellant against the appellee, surety on a road contractor's bond. The general facts in relation to the suit are set out in the opinion in the case of Exchange Bank v. Federal Surety Co., 28 F.(2d) 485, filed at the same time with this opinion. The appellant furnished to the contractor gasoline which was used as fuel in the operation of trucks, tractors, a concrete mixer, and pumps, all of which machines were used in connection with the construction of the road; also oil which was used for lubricating said machines; also kerosene which was used in lamps and lanterns utilized in connection with said work, and as fuel for cooking by the laborers on said road, who lived in temporary quarters.

The special master held that the materials so furnished were not within the purview of the Kansas statute relating to contractors' bonds. The trial court affirmed the ruling.

The statute referred to reads as follows: "That whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements." Section 60—1413, R. S. Kansas 1923.

The contention of appellant is that the gasoline, oil, and kerosene supplied by it were "material furnished * * * in making said public improvements." Though the condition of the bond was that the contractor should "pay all indebtedness incurred for labor or material furnished in the construction," we assume that it should be construed as if the words "furnished in the construction" read "furnished in making said public improvements."

At the outset we may state that the federal cases cited by appellant, viz. Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; U. S. Fidelity Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; United States v. Lowrance, 252 F. 122 (C. C. A. 8), and City Trust, etc., Co. v. United States (C. C. A.) 147 F. 155, are not of controlling force in the present controversy. They all deal with bonds of contractors given under the Act of Congress of August 13, 1894 (28 Stat. 278, c. 280), or under the amendatory Act of February 24, 1905 (33 Stat. 811, c. 778; 40 USCA § 270). Those statutes provided that bonds given by persons contracting with the United States for the construction or repair of public buildings or public works should be conditioned that the contractors would "promptly make payments to

all persons supplying * * * labor and materials in the prosecution of the work provided for.'' In the cases cited it was recognized that these federal statutes were broader in scope than the usual mechanic-lien laws of the states. In the Lowrance Case, supra, this court said (page 123):

"The act of Congress and the surety bonds given according to its provisions should be liberally, not narrowly, construed. The typical lien laws of the states and the decisions of the courts upon them should for the most part be put aside. Generally they limit the labor to direct employment on the work and the materials to those which have become constituents of the completed structure. The language of the act of Congress, 'labor and materials in the prosecution of the work,' is of broader import and embraces much that is not directly reflected or physically discernible in the resulting permanent structure.''

The same view was expressed in the City Trust, etc., Co. Case, supra.

■ The construction placed upon the statutes of Kansas by the Supreme Court of that state is, of course, binding upon the federal courts. St. L. & S. F. R. Co. v. Quinette, 251 F. 773 (C. C. A. 8); Southern Surety Co. v. Holden Co., 14 F.(2d) 411 (C. C. A. 8). ' While we have been cited to no decision of the Supreme Court of the state of Kansas which passes upon the precise question involved in the case at bar, yet there are a number of decisions which have a bearing upon the question.

In Road Supply & Metal Co. v. Bechtelheimer, 119 Kan. 560, 240 P. 846, suit was brought upon a contractor's surety bond. Plaintiff had leased to the contractor certain tools, machinery, and equipment for the construction of a highway. The contractors' bond was conditioned that it should "pay all indebtedness incurred for labor and material furnished'' in the construction of the highway. In denying plaintiff's right to recovery under the bond, the court said (119 Kan. 563 [240 P. 847]):

"Plaintiff argues that it should recover under the conditions of the bond that the contractor 'shall pay all indebtedness incurred for labor and material furnished' in the performance of the contract. This condition of the bond required by R. S. 60—1413, is for the benefit of laborers and materialmen, and is in lieu of their right to liens upon public property under the statute pertaining to mechanic's liens (Comm'rs of Jewell Co. v. Manufacturing Co., 52 Kan. 253, 34 P. 741; Griffith v. Stucker,

91 Kan. 47, 136 P. 937); hence, in determining what items are lienable, we look to those statutes (R. S. 60—1401 et seq.). Plaintiff contends that its machines and implements performed work, hence that its claim for use of the machines should be regarded as labor. The term 'labor' as used in the mechanic's lien statute refers to physical labor (Traction Co. v. Brick Co., 112 Kan. 774, 776, 213 P. 169 [30 A. L. R. 464]), or the specific kind of labor mentioned in the statute. The rental or use of tools and machinery such as is sought to be recovered in this action is not labor of the character mentioned or referred to in the statutes. The right to a mechanic's lien is purely statutory. A party does not have such a lien unless the statute gives it to him, hence, in order to be entitled to a lien the party claiming it must show himself to be within the terms of the statute.

"Plaintiff next argues that the use of the machinery and equipment for which recovery is sought · in this case is material within the meaning of our mechanic's lien statute. Material, within the meaning of our statute, is that which enters into, becomes a part of, and remains with the completed work. [United] Sash & Sales Co. v. Early et al., 117 Kan. 425, 232 P. 232, and cases there cited. And see [Bunting] Hardware Co. v. Baker et al., 116 Kan. 683, 229 P. 72, where a claim for rent upon a steam shovel used in road construction work was not allowed as a lienable item. Cases are cited from the federal court involving contracts under federal statutes and from Oregon and Washington involving the statutes of those states, where it is held that the rental value · of the use of machinery and equipment should be regarded as material entering into the completed work. But these decisions are under statutes which differ materially from our own, and which specifically state that the use of machinery shall be regarded as material, or are fairly open to that interpretation, and for that reason are not controlling.''

The statute of Kansas referred to relating to mechanics' liens reads, so far as here material, as follows:

"Any person who shall under a contract with the owner of any tract * * * of land * * * perform labor or furnish material for the erection, alteration, moving or repair of any building, improvement or structure thereon, * * * shall have a lien,'' etc. Section 60—1401, R. S. Kansas 1923.

Union Traction · Co. v. Brick Co., 112

Kan. 774, 213 P. 169, 30 A. L. R. 464, was a suit by the traction company against a surety company and others. The surety company was surety on a contractor's bond conditioned for the payment of all claims for labor and material used in the paving of certain streets in the city of Independence. The items for which recovery was sought were freight charges on paving brick from Coffeyville to Independence which the traction company had paid. The court in denying recovery against the surety company said (112 Kan. 776 [213 P. 169]):

"The appellant's main argument is that the transportation of the carloads of brick was labor, and in a certain sense that is true; but it can hardly be said that transportation by rail carriage and electric motive power was the sort of labor the Legislature had in contemplation in the enactment of the statute. The gist of the decided cases is that the labor protected by the statute is manual labor for which a daily wage is to be paid, or similar compensation for a quantum of physical toil."

The court further said:

"In [Neodesha Nat.] Bank v. Insurance Co., 109 Kan. 562, 200 P. 281, and in [Union] School District v. Cloepfil, ante, [112 Kan.] 188, 210 P. 192, this court declined to extend the provisions of the mechanic's lien act to cover moneys loaned to pay for labor and material used in constructing a building. The present case, while not strictly analogous, is bound by the same limitations. All through the mechanic's lien act, both in its original and amended form, the concern of the Legislature seems to have been for the artisan and the day laborer, and while the legislative purpose is remedial and entitled to liberal interpretation, yet its terms cannot be extended by judical construction to hold that the plaintiff's freight charges for the transportation of the carloads of brick from Coffeyville to Independence can be classed as labor so as to subject the defendant surety company to liability therefor under the terms of its bond."

Unit Sash & Sales Co. v. Early, 117 Kan. 425, 232 P. 232, was a mechanic's lien suit. One of the items was for certain molding which had been ordered for the front of a building and had been delivered upon the premises, but had not in fact been used upon the building. The court denied a lien for this item, saying (117 Kan. 427 [232 P. 233]):

"Was plaintiff entitled to a lien for the $25 for molding that was shipped to Cedarvale on November 7, 1921? It appears that the molding was never attached to the building and therefore never became a part of the realty on which the lien was sought. It has been determined that under the statute providing for liens, no lien can be allowed for material purchased for a building on the land of the owner unless it in fact goes into the building and becomes a part of the realty."

The case of Shannon v. Abrams, 98 Kan. 26, 157 P. 449, Ann Cas. 1918E, 502, is largely relied upon by appellant, but in that case the bond was not a statutory bond, to be construed in connection with the mechanic's lien law, but it was a bond described by the court as follows:

"It should be noted that the surety company's obligation is not to pay the mere statutory liens for labor and materials, but is governed by the terms of its contract. The contractors agreed to build the road and to pay 'for all labor and material and all other obligations or liabilities incurred in the doing of the said work or performance of any of the things necessary' thereunder, and to give the statutory bond. The defendant became surety for the full performance of all the terms of the contract, and all these bills were within the fair terms of that contract."

The courts of some jurisdictions draw a distinction between materials on the one hand that merely incidentally promote the work of construction, and materials on the other hand that either enter into the structure and remain there permanently, or are consumed in being used directly on the work; the latter two classes being lienable, the first one not. Thus, in New York a steam shovel leased to a contractor and used in the construction of a public improvement has been held not "material" within the meaning of the mechanic's lien law, and the owner held not entitled to a lien for the unpaid rent (Troy Public Works Co. v. City of Yonkers, 207 N. Y. 81, 100 N. E. 700, 44 L. R. A. [N. S.] 311); and coal sold to a contractor and builder of a state highway and used as fuel in road rollers and tractors used on the construction, has been held not lienable (Shultz v. Quereau Co., 210 N. Y. 257, 104 N. E. 621, L. R. A. 1915E, 986, Ann. Cas. 1915B, 965); while dynamite used in breaking up frozen earth, required by a construction contract to be excavated, so that it could be handled by steam shovel, has been held to be a lienable material (Schaghticoke Powder Co. v. G. & J. Ry. Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A.

[N. S.] 288, 11 Am. St. Rep. 751, 5 Ann. Cas. 443).

In Wisconsin, where the statute gives a mechanic's lien to every principal contractor who furnishes materials "for or in or about the erection, construction, repair," etc., of any structure which becomes part of the freehold, it has been held that a lien could. be had for lumber and other materials furnished for the building of a temporary cofferdam, the erection of which was necessary to the construction of a permanent dam. Barker & Stewart Lumber Co v. Marathon Paper Mills Co., 146 Wis. 12, 130 N. W. 866, 36 L. R. A. (N. S.) 875. The rationale of the decision was that the materials which went into the cofferdam lost their identity and fitness for any future use to any material extent. In other words, the material was placed upon the same footing as the dynamite in the Schaghticoke Case in New York, and as the powder in the so-called "powder · cases" (see 40 C. J. 86, note 79). The Wisconsin court, however, in the case above cited, said:

"It is certainly true that this doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Thus it might be argued that upon the same principle coal that is used in portable engines, oil that is used in the lubrication of building machinery, and even food which is eaten by laborers, are all consumed in the construction of the building and hence are lienable materials. But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials."

The same distinction is recognized in a number of other jurisdictions, among them, Massachusetts (see George H. Sampson Co. v. Commonwealth, 202 Mass. 326, 88 N. E. 911; Thomas v. Commonwealth, 215 Mass. 369, 102 N. E. 428), and Indiana (see Niagara Oil Co. v. McBee, 45 Ind. App. 576, 91 N. E. 250; Mossburg v. United Oil & Gas Co., 43 Ind. App. 465, 87 N. E. 992).

In the case of Chicago Lumber Co. v. Douglas, 89. Kan. 308, 131 P. 563, 44 L. R. A. (N. S.) 843, the Supreme Court of Kansas held that lumber furnished for making certain wooden. forms for a concrete structure was lienable. In its opinion the court recognized the distinction above mentioned, and cited with approval the Schaghticoke Case from New York and the Barker & Stewart Lumber Company Case from Wisconsin. The court in its opinion said (89 Kan. 317 [131 P. 567]):

"The material in the forms furnished by appellee was understood by all to be a necessary part of the construction of the building. For a time these forms were an essential part of the walls, columns and partitions. They were provided for in the contract and their character was included in the specifications. While ·the walls were hardening they were as essential to the structure as the cement and sand which remained in the walls in a different form after the work was completed. These forms operated to enhance the value of the land on which they were used as· did the labor in setting them up. They were finally taken down and removed, but the life and substance of the material had been used up in the erection of the building. The material cannot be regarded as a part of the contractors' plant because it was impregnated with cement and rendered practically unfit· for other uses. It was used directly in the construction of the building, and being consumed in that use it can be fairly said that within the meaning of our statute it entered into and was used in the erection of the building. It is clear that it came within the terms of the bond as it was 'material furnished and used in and about said contract work.' "

While, as already stated, the Supreme' Court of Kansas has not passed upon the lienability of such materials as were furnished in the instant case for the purposes stated, yet, in view of the holdings of that court above set out, which are in accord with the holdings of the courts of New York and Wisconsin upon similar questions under similar statutes, we are of the opinion that if the question involved in the case at bar were presented to it, the decision would be in accord with those by the courts of New York and Wisconsin on· the same question. Furthermore, we find that the decisions of the courts of those states on the question here involved are in agreement with the greater weight of authority and sustained by the better reasoning. We think the case at bar should be decided accordingly. ·

See, in addition to the cases cited above, Luttrell v. Railroad Co., 119 Tenn. 492, 105 S. W. 565, 123· Am. St. Rep. 737; Pierce Oil Corp. y. Parker, 168 Ark. 400, 271 S.

W. 24; Southern Surety Co. v. Metropolitan Sewerage Commission, 187 Wis. 206, 201 N. W. 980, 204 N. W. 476; Southern Surety Co. v. Hotchkiss, 187 Wis. 227, 201 N. W. 986; City of Alpena ex rel. v. Title Guaranty, etc., Co., 168 Mich. 350, 134 N. W. 23; Philadelphia v. Malone, 214 Pa. 90, 63 A. 539. In the case last cited the court in its opinion said (214 Pa. 98 [63 A. 541]):

"As suggested in the opinion of the court below, 'to hold with the plaintiff in this case is to require us to extend the bond to cover practically everything purchased by every subcontractor on the work. If coal can be recovered for, then of course oil, waste, repairs, or tools used in running the derrick and locomotive or about the cars, or repairing them, would have to be recovered for, and, going a step further, light furnished if the work was prosecuted at night. If coal for an engine can be recovered for, why not feed for horses, a farrier's bill or the bill of a veterinarian?'"

We think that the materials furnished in the case at bar were not lienable under the Kansas statute, and were not within the purview of the surety bond. Our conclusion is that the decree of the court below was correct, and it is accordingly affirmed.