146 So. 14

**H. R. HAYES LUMBER CO. v. McCONNELL et al.**

No. 31562.

Nov. 28, 1932.

Rehearing Denied Jan. 30, 1933.

George K. Perrault, of Opelousas, for appellant Standard Highway Co., Inc.

Warren Hunt, of Rayville, for appellee in concurso R. B. McGowan.

George Wesley Smith, of Rayville, for appellee H. R. Hayes Lumber Co., Inc.

OVERTON, J.

This appeal presents for consideration a concursus proceeding, provoked by the H. R. Hayes Lumber Company, one of the claimants, asserting a claim against a fund in the hands of the Louisiana highway commission under the provisions of Act No. 224 of 1918 as amended by Act No. 271 of 1926.

The claim, as do all others involved herein, grows out of a contract let by the Louisiana highway commission to the Standard Highway Company, the appellant herein, for the construction of a highway in Richland parish, known as the Crew Lake-Rayville highway. The Standard Highway Company sublet a contract for a part of the work to J. A. McConnell, and another contract, also for a part, to J. B. McConnell.

Of the numerous claims asserted against the fund only three were contested, namely: A claim of the H. R. Hayes Lumber Company for lumber sold and delivered to J. A. McConnell, one of the subcontractors, amounting to $1,712.79, though the part of this claim, now asserted against the fund, is only $1,284.52, or 75 per cent. of the total claim; another claim for work done by J. A. McConnell, in constructing the highway, amounting to $410; and still another in favor of R. B. McGowan for work done by him, as a subcontractor of the Standard Highway Company, by clearing a part of the right of way for the highway.

There was judgment below in favor of the H. R. Hayes Lumber Company, and against J. A. McConnell for $1,712.79, with legal in-

terest thereon from judicial demand and against J. A. McConnell and the Standard Highway Company, in solido, for $1,284.60 of that amount, with legal interest thereon from judicial demand until paid, with recognition of a lien and privilege, under Act No. 224 of 1918, as amended, on the balance of the contract price, due the Standard Highway Company by the Louisiana highway commission, and judgment in favor of J. A. McConnell and against the Standard Highway Company for $410; and judgment in favor of R. B. McGowan and against the Standard Highway Company for $119.19, the two last judgments to bear 5 per cent. yearly interest from judicial demand, and to enjoy a lien and privilege on the balance of the contract price in the hands of the Louisiana highway commission.

The judgment in favor of J. A. McConnell does not seem to be questioned, as to its correctness, and, since no error appears in it, that judgment will be affirmed. The correctness of the judgment in favor of R. B. McGowan is not questioned in the brief of the Standard Highway Company, but McGowan has filed an answer to the appeal, in which he asks that the judgment be increased to the full amount of the claim, asserted by him, and has filed a brief in support thereof. After reviewing the evidence, we are not prepared, however, to say that there is error in the judgment, and hence the judgment will be affirmed as to him.

The real purpose of this appeal is to test the correctness of the judgment in favor of the H. R. Hayes Lumber Company, in so far as concerns the Standard Highway Company, the appellant herein. The claim of the H. R. Hayes Lumber Company is for lumber, roofing, and nails sold to J. A. McConnell, a

subcontractor, who held a contract from the Standard Highway Company for bridge work, consisting, among other things, of furnishing and placing pre-cast piers for a bridge. The claim consists almost entirely of lumber furnished. The theory upon which the Standard Highway Company is sought to be held liable, at least, out of the funds due it by the Louisiana highway commission, for the debt contracted by McConnell, for the purpose of carrying out his contract, is that, by the nature of the claim, it operates as a privilege on the unpaid portion of the contract price, due that company, under the provisions of Act No. 224 of 1918, as amended.

It is not disputed that the lumber and nails were used for the construction of forms, into which the concrete was poured and allowed to harden, to enable McConnell to execute his contract. The forms, it is conceded, were taken apart again and again, and the hardened concrete removed, and the material, entering into them, was repeatedly used for the construction of new forms. Some of the lumber and nails were used for the construction of temporary trestling, constructed for the operation of the pile driver, used to put piers in place. None of the timber or nails were permitted to remain to become a part of the completed structure. All of the nails were used and destroyed in the work, and about 75 per cent. of the lumber was materially injured or destroyed in the making of the forms and in the erection of the temporary trestle. Some of the lumber, after the completion of the work, was shipped to other points, to be used on other contracts.

The purpose of Act No. 224 of 1918, as amended, is to afford protection to those,

among others, who furnish material for use in constructing and repairing public works.

The act has been construed and applied in several cases. One, among these, is the case of Red River Construction Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752, 754. It was there held, in a case arising prior to the amendment of the act, by Act No. 271 of 1926, relating to the furnishing of material and supplies furnished for use in machines, used in the construction or repair of public works, that oil and gasoline, sold for use in trucks, used in hauling and spreading material on a public roadway, did not come within the provisions of Act No. 224 of 1918, since the oil and gasoline did not enter into the roadway as a part of it. In passing on the question, the court, quoting from Pierce Oil Corporation v. Parker, 168 Ark. 400, 271 S. W. 24, 26, said:

"Coal and oil while used as fuel for portable engines and machinery used in construction work, are merely an incident in the operation of the machinery, and partake of the same characteristic as it does. In other words, they are at least one step further removed from the actual work of construction, and do not have any immediate connection with the structure at any time. * * * Courts must stop somewhere in the construction of these statutes. Otherwise repairs on the machinery used in the construction of the improvement, and the diminished value of the machinery and tools used in such construction, will be deemed to be lienable claims. If matters which are only remotely connected with the * * * public improvement should be held to be lienable, the protection of the bond to the class intended by the statute would be greatly impaired."

In the same case, the court, quoting from Standard Oil Co. v. Detroit Fidelity & Surety Co. (1927) 24 Ohio App. 237, 157 N. E. 418, where the statute read, "for materials furnished in the construction of the highway," said:

"Proceeding to construe the language in question, and giving the assured the benefit of a liberal construction thereof, we are first met with the proposition whether the gasoline and oil actually and physically enter into the composition of what is known as the construction of the highway improvement. Is the gasoline or oil an element or ingredient of the improvement? Are they elements of material, physically connected with the formation of the structure constituting the public improvement? The answer necessarily is in the negative. A disintegration of the elements composing the improvement would not reveal the presence of gasoline or oil, and consequently the gasoline and oil do not enter into the construction of the improvement, because they form no part thereof."

In the case of State v. Smith, 167 La. 301, 320, 321, 119 So. 56, 63, in passing on claims, arising prior to the amendment of the act of 1918, by the act of 1926, for the sale, more especially, of gasoline and oil for the use of the machinery in constructing an embankment, to be used as part of a public highway, and for plain piling, used for a temporary trestle from which the dirt to construct the embankment was dumped, it was said:

"It will be seen that none of the supplies or materials enumerated entered into the structure of the road embankment. * * * The statute grants a privilege for 'material furnished in the construction, erection, altera-

tion or repair of such road.' If this language is intended to describe material entering into and forming part of the structure, according to its specifications and design, it of course, excludes the items enumerated, and such must be the interpretation. While there are equities favoring a different view, the term 'material,' when found in a building statute, generally means something which becomes incorporated as a part of the building or structure, and it would require extremely liberal construction to construe it to include 'supplies' not forming part of the structure."

In the case of John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768, referring to the last two cases, cited and quoted from, this court said:

"The theory upon which these cases were decided was that the work done or the material furnished must have entered directly into and must form part of the improvement constructed, to give the claimant a cause of action * * * on the bond furnished. It is not sufficient that the work be done in repairing machinery used in constructing the improvement, or that the material furnished be used in such repairs, for in such case neither the work nor the material enters directly into the improvement."

The doctrine of the case of Red River Construction Co. v. Pierce Petroleum Corporation and of the case of State v. Smith was cited approvingly in Brooks v. Byrd & Clopton, 168 La. 450, 122 So. 287, and also in State v. Miller, 169 La. 914, 923, 126 So. 422. The case of Colonial Creosoting Co. v. Perry, 169 La. 90, 124 So. 182, does not appear to be out of accord with the foregoing authorities.

The trial court was influenced in allowing the claim of the H. R. Hayes Lumber Company, to the extent of the destruction of the nails and of the depreciation or loss of a great part of the lumber, by the recent case of Long Bell Lumber Co. v. S. D. Carr Construction Co., 172 La. 182, 133 So. 438, 439, decided by a divided court. One among the several claims there considered was a claim for dynamite, fuses, and caps, furnished two of the contractors. The claim was contested on the ground that this material did not actually enter into the construction of the highways. In that case the material was used by the subcontractors directly on the highway, in clearing the ground over which the road was to be constructed, preparatory to starting grading operations, and not indirectly or remotely, as were the nails and lumber in this case. The destruction of the explosive was the only way in which it could be used to accomplish the end in view and carry out the contracts. The court, in considering these facts, said:

"In these circumstances, it will not do to say that the use of the dynamite, fuses, and caps, although they were consumed in the prosecution of the work, and are therefore invisible except as they endure in tangible results, does not give the furnisher thereof a right of action on the contractor's bond under the statute."

The case was one where, by the direct use and consumption of the material on the proposed bed of the roadway, a desired condition was brought about, which formed a permanent and necessary part of the roadway. In that sense it may be said the material entered into the completed work. On the other hand, the present case is one in which the lumber and the nails were not used directly on the work, but indirectly on it, once removed, as it were, from the highway construc-

tion, much, though not quite so far, as was the saw that sawed the lumber. In this view, there is a clear distinction between this case and the Long Bell Lumber Co. Case—a distinction that it is necessary to observe, otherwise the act of 1918, which is intended to protect certain classes of claimants, will be made virtually of no value by the letting in of a large number of claimants, never intended by the Legislature, whose claims are far removed from the improvement under way. It may be said that it was not the intention of the majority of the court, in the Long Bell Lumber Co. Case, to depart from prior jurisprudence, as appears from the face of the decision itself. It may also be said that the question presented is not one of equity, but is one of law, and of that kind which must be construed strictly, and the jurisprudence under it must be uniform, for there is a vast amount of material furnished monthly in this state under the statute, the furnishers looking largely to the statute for protection.

Since the material furnished did not enter directly into the improvement, but only in an indirect and secondary manner, and, in no sense, goes to make up the completed improvement, and since the act of 1918 has not been amended so as to bring the material furnished within its scope, there is nothing to do but to amend the judgment appealed from by rejecting the demand of the H. R. Hayes Lumber Company, so far as it affects the appellant, the Standard Highway Company.

The judgment, appealed from, is amended by rejecting the demand of the H. R. Hayes Lumber Company, in so far as the judgment is operative against the Standard Highway Company or recognizes a privilege on the unpaid part of the contract price, in the hands

of the Louisiana highway commission, due the Standard Highway Company, and in all other respects the judgment is affirmed, the costs of this appeal to be borne by the H. R. Hayes Lumber Company.

ODOM, J., is of the opinion that a lien should be recognized for the price of nails and the lumber totally destroyed in constructing the forms for the concrete piers.