MARVIN, Judge.
In this action under the Public Works Act (R.S. 38:2241 et seq.), the plaintiff appeals the rejection of its demands for recognition of a materialman’s lien arising out of the construction of the football stadium at Northeast Louisiana University in Monroe, a concrete structure completed in September, 1978.
The lower court held that the material sold by plaintiff to a subcontractor (plywood, lumber and nails), and used with other material to build forms for the structure into which was placed steel and concrete, was not material or supplies furnished for the construction of the stadium within the meaning of the Act.[1] We agree. H. R. Hayes Lumber Co. v. McConnell, 176 La. 431, 146 So. 14 (1933).
Some of the wooden forming material survives the job and may be used on other jobs. Much of the material, however, becomes useless after repeated assembly and dismantling. Here the • subcontractor defaulted on his forming contract when the work was about 30 percent complete. The general contractor, with some of its own material, used some of the material aban *207 doned on the job by the subcontractor, and completed the remainder of the forming work.
The Public Works Act, originally Act 224 of 1918, although often amended and expanded in many respects since then, has remained unchanged with respect to what materials are lienable, as has the interpretation of the statute in several cases.[2] To be furnished for the construction of a public work and thus lienable, the material must be incorporated into the work or directly consumed by the work so as to become a part of the work. H. R. Hayes Lumber Co., supra.
“It appears to be well settled that materials which form a component part of the completed structure or are consumed in the work are considered covered by the contractor’s bond given under the provisions of [the] Act ... On the other hand, it is equally well settled that the instrumentalities forming a part of the contractor’s plant or equipment used in doing the work which survive the performance and remain the property of their owner after the completion of the contract are not covered by the bond .” Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545, 547 (1941); B. & G. Crane Service, Inc. v. Anderson Bros. Corp., 132 So.2d 681 (La.App. 1st Cir. 1961); see Patent Scaffolding Co. v. Ross Corporation, 172 So.2d 364 (La.App. 4th Cir. 1965) writ refused; Best Electric Supply Company, Inc. v. Rittiner, 334 So.2d 792 (La.App. 4th Cir. 1976).
In the first cited case a lumber company which furnished material to a . bridge contractor was allowed recovery for part of the material which went into the completed structure, but not for the part of the material which did not go into the completed structure. In the second cited case, nails, cable, wedges and rope which were not shown to have gone into, or to have been consumed by, the construction of a highway were held not lienable.
In the Hayes Lumber Co. case, the material furnished was lumber and nails “. . . used for the construction of forms, into which concrete was poured and allowed to harden . . . The forms . were taken apart . . . and the material . . . was repeatedly used for the construction of new forms . all of the nails . . . and about 75 percent of the lumber was materially . destroyed . . . Some of the lumber, after the completion of the work, was . used on other contracts.” 146 So. at 15. The argument was made in Hayes Lumber Company that the forms were “effectively consumed” as were the dynamite and caps in Long Bell Lumber Company case. The Supreme Court answered:
“[2] The [Long Bell] case was one where, by the direct use and consumption of the material on the proposed bed of the roadway, a desired condition was brought about, which formed a permanent and necessary part of the roadway. In that sense, it may be said the material entered into the completed work. On the other hand, the present case is one in which the lumber and the nails were not used directly on the work, but indirectly on it, once removed, as it were, from the highway construction, much, though not quite so far, as was the saw that sawed the lumber. In this view, there is a clear *208 distinction between this case and the Long Bell Lumber Co. Case — a distinction that it is necessary to observe, otherwise the act^ of 1918, which is intended to protect certain classes of claimants, will be made virtually of no value by the letting in of a large number of claimants, never intended by the Legislature, whose claims are far removed from the improvement under way. It may be said that it was not the intention of the majority of the court, in the Long Bell Lumber Co. Case, to depart from prior jurisprudence, as appears from the face of the decision itself. It may also be said that the question presented is not one of equity, but is one of law, and of that kind which must be construed strictly, and the jurisprudence under it must be uniform, for there is a vast amount of material furnished monthly in this state under the statute, the furnishers looking largely to the statute for protection.
“Since the [forming] material furnished did not enter directly into the improvement, but only in an indirect and secondary manner, and, in no sense, goes to make up the completed improvement, and since the act of 1918 has not been amended so as to bring the material furnished within its scope, there is nothing to do but to amend the judgment appealed from by rejecting the demand of the H. R. Hayes Lumber Company . . . ” 146 So. at p. 16.
The Hayes Lumber Co. case also discussed the equities which were there, as well as here, argued:
“In the case of State v. Smith, 167 La. 301, 320, 321, 119 So. 56, 63 [1928], in passing on claims, arising prior to the amendment of the act of 1918, by the act of 1926, for the sale ... of gasoline and oil for the use of the machinery in constructing ... a public highway, and for plain piling, used for a temporary trestle, it was said:
‘It will be seen that none of the supplies or materials enumerated entered into the structure of the road embankment. * * * The statute grants a privilege for “material furnished in the construction, erection, alteration or repair of such road.” If this language is intended to describe material entering into and forming part of the structure, according to its specifications and design, it of course, excludes the items enumerated, and such must be the interpretation. While there are equities favoring a different view, the term “material,” when found in a building statute, generally means something which becomes incorporated as a part of the building or structure, and it would require extremely liberal construction to construe it to include “supplies” not forming part of the structure.’ ” 146 So. at p. 16.
Continental Casualty Co. v. Associated Pipe & Supply Co., 310 F.Supp. 1207 (E.D.La.1969), on which plaintiff relies, interpreted the Long Bell case to allow a lien for wire and rope cut into various lengths and “effectively consumed” in facilitating pipeline construction, but not incorporated into the actual construction. The federal district court, however, failed to consider the explanation by the Louisiana Supreme Court of its Long Bell holding made in H. R. Hayes Lumber Co., and we attach no significance to the federal court’s decision.
In Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La.App. 2d Cir. 1960), cert. denied, this court noted that the protection of the lien statute would not be “stretched” to become an “endless chain”, and that the law was designed to protect only the contractor and subcontractor [and their respective creditors] for constructing “. . . some work of fixed and permanent nature . . . which . must be surrendered to him for whom the work was done.” 124 So.2d at 216. See also Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975).
The material in question here (plywood, lumber and nails) was not incorporated into the completed concrete structure. The use of the material was temporary and not permanent and fixed. The material was not surrendered to the university for whom the work was done. Once the con *209 crete hardened, the material was removed from the structure. In many jobs there are things which are used temporarily that do not become a part of the completed structure. Examples in the cases include material used for making forms, scaffolding, lumber, nails, wedges, rope, cables, material in temporary embankments, temporary piling as well as tools and implements. Some of these things are “effectively consumed”, greatly damaged, or worn out by the temporary use to which they are employed. Nonetheless, they are not directly consumed in or by the work and exist in tangible form after the work is completed. An implement, no matter how specialized, which is used to create a particular shape required by a public contract, and no matter what its worth after, does not become a part of the work, and unlike dynamite directly employed to create a shape for the foundation of a work, it is not directly consumed so as to become a part of the work. This is the express pronouncement of the cases beginning in 1928 and ending in 1976, as we have reviewed them.
Notwithstanding our recognition of the present age of increased disposability of things, the cases have answered the several contentions of the appellant. These cases are consistent and well reasoned and not, as appellant argues, “old and of questionable value.” The statute has been and is being interpreted in the light of the policy of protecting those who furnish material for the construction of a public work, but as was said in the Hayes Lumber Co. case, the lien statute is to be construed strictly and with a view in mind of maintaining uniformity.
Plaintiff lastly contends that once it was shown that plaintiff delivered the material to the construction site, the defendant contractor had the burden, which it did not meet, of showing that the material did not become incorporated into the construction. See Bernard Lumber Co. v. Sayre, 230 La. 17, 87 So.2d 713 (1956). This burden was met here because it was clearly established that the material was used in building forms and was not incorporated into the structure and that the material was not directly consumed in or by the work so as to become a part of it.
For the reasons assigned here and in an excellent written opinion below, at appellant’s cost, judgment is AFFIRMED.

. R.S. 38:2242 reads in part:
“Any person to whom money is due for . furnishing materials or supplies for the construction ... of any public works . . may . . . file a sworn statement of the amount due him with the governing authority having the work done . . . ”
See also Section 2241 for the language “material or supplies furnished for the construction

. Pertinent here are R.S. 38:2241, originally Act 224 of 1918 § 1, amended by Act 271 of 1926 § 2 and Act 344 of 1975 g 1; and R.S. 38:2242, originally Act 224 of 1918 §§ 2, 3, amended by Act 271 of 1926, §§ 3, 4, Act 59 of 1960 § 1, Act 537 of 1966 § 1 and Act 253 of 1977 § 1. See State v. Smith, 167 La. 301, 119 So. 56 (1928); Long Bell Lumber Co. v. S. D. Carr Const. Co., 172 La. 182, 133 So. 438 (1931); H. R. Hayes Lumber Co., supra; Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545 (La.1941); Terrebonne Lumber & Supply Co. v. Favret, 2 So.2d 256 (La.App. 1st Cir. 1945); Moore Steel, Inc. v. Wright’s Succession, 79 So.2d 118 (La.App. 1st Cir. 1955); B. & G. Crane Service, Inc. v. Anderson Bros. Corp., 132 So.2d 681 (La.App. 1st Cir. 1961); York Corporation v. Louisiana Plumbing Co., 151 So.2d 520 (La.App. 2d Cir. 1963); Patent Scaffolding Company v. Ross Corporation, 172 So.2d 364 (La.App. 4th Cir. 1965), writ refused; Best Electric Supply Company, Inc. v. Rittiner, 334 So.2d 792 (La.App. 4th Cir. 1976).