## WILLIAMS & GRAY v. STEWART et al.

### No. 4522.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1933.

J. Rush Wimberly, of Arcadia, for appellant.

Henry W. Bethard, Jr., of Coushatta, for appellees A. J. and G. W. Huggins.

S. M. Cagle, of Coushatta, for appellees D. W. Stewart and W. M. Smith.

Stephens & Stephens, of Coushatta, for appellee J. C. Moreland.

TALIAFERRO, Judge.

Williams & Gray, an ordinary partnership, under contract with the Louisiana Highway Commission, constructed the highway from near Coushatta, in Red River parish, to the south line of the parish of Bienville, designated as Project 178–C. Construction of a part of the road proper was sublet to one G. A. Shows, and construction of bridges and culverts was sublet to one C. E. Kay. The road was accepted May 19, 1931, by the commission, as having been constructed and completed in the manner provided by the contract. D. W. Stewart, A. J. Huggins, G. W. Huggins, J. A. McConnell, W. M. Smith, J. C. Moreland, the Wrought Iron Range Company, and several others joined in this suit, but

who did not appeal from a judgment adversely to them, caused to be inscribed in the mortgage records of Red River parish sworn accounts against Williams & Gray for the purpose of preserving their rights as supposed lienors against the balance due the contractors by the highway commission on account of said road construction.

Williams & Gray provoked this proceeding by rule against said lien claimants to have the inscription of their respective claims canceled and erased from the records. They allege that they have paid all legitimate bills and claims against said road that could be ranked as liens against it, and that the recorded claims of the above-named persons were "fictitious and spurious"; that the record thereof was operating to prevent petitioner from obtaining full and final settlement of balance due on said contract.

G. W. Huggins answered the rule. He asserts that the claim filed by him, for $125, was for board supplied by him to C. E. Kay and wife and son, during the months of June and July, 1930, while they were engaged in actually working and laboring on highway project No. 178–C, and by reason thereof his said claim should be recognized as privileged against said road project and the contract price thereof. In the alternative, and by reconvention, he alleges that should it be found and held that his said claim, in whole or part, was not lienable against said contract price, that he should have judgment against plaintiff and its individual members, Wilson H. Williams and T. Walter Gray, in solido, for this, to wit: That said C. E. Kay, wife and son, were permitted to board at respondent's hotel without payment in advance solely because Williams & Gray, prior to the beginning of said boarding, instructed him to board them and to charge the bill to them, Williams & Gray, and therefore said Williams & Gray were and are principals in said transaction and owe said bill of $125. He prays accordingly.

A. J. Huggins also filed answer to the rule. He asserts that he furnished supplies and materials necessary and essential to the construction of said highway to the amount of $242.17 to plaintiffs and C. E. Kay, as principals, during the year 1930, as shown from itemized account annexed to his answer. He avers that each and every article thereon was necessary and essential material and supplies to the construction of the road, and that same enjoy a lien and privilege for their payment against the balance due on the construction price of said highway. He reconvenes, in the alternative, in same manner as did G. W. Huggins, and prays for judgment against the partnership and the individual members thereof for the full amount of his account. He alleges that C. E. Kay, also bound on said account, is dead.

D. W. Stewart answered, and said that Williams & Gray was due him $88.86 as the assignee of the claim of G. A. Shows against said partnership, consisting of material furnished, labor performed, and funds advanced and used in the construction of said road, as appears from sworn account recorded in the mortgage records of Red River parish. He avers that Williams & Gray acknowledged said indebtedness in writing, which was also filed and recorded. He prays for judgment dismissing the rule, and in his favor against the partnership for the amount of the Shows account above mentioned.

W. M. Smith answered. He alleges that plaintiff is due him $156.18 on account for money, accessories, gas, and oil furnished them and their subcontractors, which were used in the construction of said road, as will be shown on trial. He asserts that under the laws of Louisiana his account is privileged. He prays for judgment rejecting the rule sued out against him, and for judgment for the amount of his account against plaintiff.

John C. Moreland also answered the rule. He asserts that his claim, filed and recorded, is a legal and valid one, and is secured by lien and privilege against the construction price of said highway; that it was for work done, labor performed, and materials furnished, sold, and used in the building of said highway. By reconvention, and in the alternative, he avers that should the court find and hold that any part of his account against plaintiff is not lienable in whole or part, then he prays for judgment against the partnership and the individual members in solido for such part thereof.

Neither the Wrought Iron Range Company nor J. A. McConnell answered the rule in the lower court, nor made appearance in this court.

Plaintiff moved to strike from the answer of A. J. Huggins the reconventional demand for the reason that it was an attempt to convert a summary proceeding into an ordinary proceeding. This motion was denied. It was agreed that this motion and the court's ruling should apply to the other defendants who reconvened.

After trial, but before the case was decided, T. W. Gray, defendant in reconvention, died. His widow qualified as administratrix of his succession and was made party to the suit.

The lower court rejected plaintiff's demand as to all the seven defendants, named herein, except G. W. Huggins, but gave him judgment on his reconventional demand against Williams & Gray, W. H. Williams, and the administratrix of the succession of T. W. Gray, deceased, in solido, for $125 with 5 per cent. per annum interest from August 1, 1930. Plaintiff only appealed.

A. J. Huggins answered the appeal. He prays that the judgment in his favor be af-

firmed, but should same be not affirmed in toto, because some part of his claim is held not lienable, in such event he prays for judgment against plaintiff on his reconventional demand for the aggregate amount of the items held not to be lienable.

W. M. Smith and D. W. Stewart also answered the appeal. They pray for amendment of the judgments in their favor, respectively, in this respect: That as plaintiffs do not live in parish of Red River, where this suit is filed, they are entitled to personal judgment against them on their reconventional demands.

The first question to be decided is whether the reconventional demands set up by defendants can properly be maintained in this, a summary, action. The plaintiff and its component members are domiciled without Red River parish.

The pertinent part of article 375 of the Code of Practice reads as follows: " * * * When the plaintiff resides out of the State, or in the State, but in a different parish from the defendant, said defendant may institute a demand in reconvention against him for any cause, although such demand be not necessarily connected with, or incidental to the main cause of action."

This law simply lays down the rule that when one is sued before his own court by a plaintiff who resides in another parish, that by reconvention defendant may invoke any kind of cause of action against plaintiff and cumulate it with the main suit for purpose of trial and determination. The intention of the rule is manifest. The law abhors a multiplicity of suits. The quoted part of this article is comprehensive in its purpose. No exceptions are incorporated in it, and, after diligent search, we have found no decision by our courts writing into it any exception, nor, by interpretation, modifying the plain meaning of its unambiguous wording. We have been cited to none. No hardship or inconvenience has been inflicted on plaintiff by these reconventional demands being allowed and tried along with its rule. This rule was originally fixed for trial on December 11, 1931, and on motion of plaintiff's counsel was continued and refixed for trial on February 8, 1932. On this date answers were filed and trial immediately had. The summary character of the suit was destroyed by the delay, which plaintiff voluntarily caused by asking for a long continuance. We think the ruling of the lower court on this question correct.

### Claim of D. W. Stewart.

It appears that J. S. Williams was a member of the plaintiff partnership when the contract to construct the highway was entered into. He later disposed of his interest therein to his brother, W. H. Williams, also a partner, who assumed the former's liabilities. The account which Stewart claims to own is against J. S. Williams and in favor of Geo. A. Shows. It was considered and dealt with as a partnership liability. It was assigned to Stewart on or about July 8, 1930, by Shows. The debit on the account is for $875, being for two and one-half months' lease on road equipment, and the credits, extending over the period from March 13 to July 8, 1930, amount to $796.08, leaving a balance of $78.92 due Shows. The account is dated July 8th. Affixed to it is the joint statement of Shows and J. S. Williams that it is correct. This statement is not dated, but presumably was made July 8th. On July 17th, J. S. Williams signed another statement wherein he declared that he was due Shows $9.94 "as balance over and above amount as shown on statement rendered July 8, 1930." There is no evidence in the record that W. H. Williams had any notice or knowledge that Stewart had acquired the account from Shows, and on July 11th he gave Shows his personal check on a bank in Arcadia, La., for $103.40, on the face of which was written: "In full settlement of J. S. Williams' indebtedness on Proj. 178–C." The check was collected promptly. W. H. Williams testified that the check was intended to pay all the indebtedness due by J. S. Williams to Shows, as stated on its face.

Article 2643 of the Civil Code, appearing in chapter 12 of the Assignment or Transfer of Credits and Other Incorporeal Rights, reads as follows: "The transferree is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place."

And article 2644 reads: "If, previous to notice having been given of the transfer to the debtor, either by the transferrer or by the transferee, the debtor should have made payment to the transferrer, the debtor is discharged of the debt." Geisenberger v. Cotton, 116 La. 651, 40 So. 929.

Many cases in point under these two articles are cited by Dart's new Code.

It is contended by Stewart that J. S. Williams was owing to Shows the balance on account assigned to him, in addition to the amount of the check; but the evidence does not sustain this contention. The testimony of Shows was not taken. His whereabouts was known to Stewart. It seems that he left Red River parish immediately after July 11th. He collected from W. H. Williams what was due him by J. S. Williams, after having assigned his account to Stewart. The judgment of the trial court on this claim will have to be reversed.

### Claim of A. J. Huggins.

Counsel for this defendant admits that many items charged in his account are not lienable against the contract price of this highway project, but does not specifically point out the items referred to. We will enu-

merate many of the articles charged on the account, which is illustrative of the account in its entirety: Garters, razor blades, cigarettes, matches, tobacco, talcum powder, union suits, hose, candy, shoes, envelopes, gloves, nails, lamp, phone messages, roofing, hacksaw blades, buckets, drugs, files, rakes, wire, etc. It is not shown that any of these articles actually found their way into the highway or the bridges thereon built by the plaintiff or its subcontractor, Kay. In fact, only a meager part of the account could have possibly been used in building the road or bridges. Under authority of the very recent case of Hayes Lbr. Co. v. McConnell et al. (La. Sup.) 146 So. 14, no part of this account is privileged against the highway contract price. The syllabus of that case reads: "Materialman's claim for lumber and nails furnished subcontractor, and used in constructing forms for concrete piers in highway bridge work, none of which remained part of completed structure, held not lienable on contract price due contractor from highway commission (Act No. 224 of 1918, as amended by Act No. 271 of 1926)."

The materials which plaintiff contended were lienable, in that case, were lumber, roofing, and nails sold to the subcontractor McConnell. The lumber and nails were used to construct forms for concrete piers, etc.

■ This account is charged to C. E. Kay and the firm of Williams & Gray. It is virtually conceded that prior to the time some shovels were purchased on April 25, 1930, when the account amounted to $95.30, there was no agreement or commitment on part of the plaintiff to pay, or stand good for the payment of, the account in whole or part. Therefore, it is clear that so far as this part of the account is concerned, any promise to pay it by Williams & Gray could only be proved by written evidence. Civ. Code, art. 2278.

■ Mr. R. W. Jackson, bookkeeper for Huggins, testified that Mr. H. W. Williams "came upon the front porch and I told him that Mr. Kay was getting some stuff, and he said 'he would see that we got our money, but to hold him (referring to Kay) down.'" This conversation took place when the shovels were purchased on April 25, 1930. This, and all other like testimony offered by defendants in rule, was objected to by plaintiff on ground that it was an attempt to prove the promise to pay the debt of a third person by parol evidence. The objection was overruled. Mr. Huggins testified that Williams said, "Go ahead and let him (referring to Kay) have stuff and that he would see that it was paid." Mr. Williams, in his testimony, admitted that he went to Huggins and "told him to charge it (the account) to Kay and I would pay for it, and I don't know if it was paid or not." He referred to the account from April 25, 1930. He fur-

ther states that no authority was given to charge the account to Williams & Gray, and denies the agreement to pay the account attributed to him by Jackson and Huggins, quoted above.' He states that Kay was heavily indebted to his firm when he died.

We are clear in the opinion that this admission of Mr. Williams, who represented the firm, committed the firm to responsibility as a principal for payment of that part of the account arising on and after April 25, 1930, amounting to $147.87. This case falls within the rule announced in Watson Bros. v. Jones, 125 La. 249, 51 So. 187, the syllabus of which is as follows: "The allegations that A. made a contract with B. to the effect that B. should sell, and let C. (a tenant of A.'s) have, goods and supplies, and that A. should pay for them, does not set up a promise to pay the debt of a third person, since two persons may be bound, as principals, for the same debt; and hence parol evidence is admissible in a suit against A., to prove the contract as alleged. If, however, it should appear from the evidence, so admitted, that A. was to pay for the goods only in the event that C. did not, the evidence would have to be disregarded, since, in that case, it would establish, as against A., an obligation to pay the debt of another, and parol evidence can neither be admitted nor considered, if admitted, for that purpose." See, also, Collier v. Brown, 19 La. App. 567, 141 So. 405; Braud, Inc., v. Beardslee, 1 La. App. 623.

The fact that Williams told defendant to charge the account to Kay would not materially affect the relative obligations of the parties. The account was in fact charged to both Kay and plaintiff. Kay's credit was not good at the time, and plaintiff had a personal and a pecuniary interest in seeing him enabled to go forward and perform the work he was engaged to do as their subcontractor.

The cases of Carter v. Lofton, 17 La. App. 223, 135 So. 119, 136 So. 107, and Wallenburg v. Kerry, 16 La. App. 221, 133 So. 832, bear upon the question herein discussed.

### Claim of G. W. Huggins.

■ Counsel for this claimant admits that no part of this account is lienable. The lower court held it was not. Therefore, if there is any liability on part of plaintiff to pay the account, such liability arose from the alleged agreement by plaintiff to be responsible for its payment. Kay, his wife and son boarded with G. W. Huggins and wife, who operated a hotel at Hall Summit, near or on the road being constructed by Williams & Gray. Mrs. Huggins testified that the account began on June 5, and ended July 25, 1930. She also testified that both Williams and Gray told her they would pay the board bill of the Kays before any part of the bill was incurred, and that she looked to them for payment. She also stated they agreed to "stand behind him"

(Kay). Mr. Gray admits that he paid to Mrs. Huggins some amounts for the account of Kay, deducting same from what was coming to him for road work, but denies positively that he or his firm were responsible for the board bill and also denies positively that he agreed to pay or stand good for the bill at any time, as testified to by Mrs. Huggins. Mr. Williams also denies that he agreed to pay or stand good for this account. He states that Mrs. Huggins asked him to pay the bill and he told her he would do so if Kay had any amount coming to him.

We do not think the evidence establishes responsibility on the part of plaintiff for this account, even though we should hold that the agreement of the copartners, if made, bound the firm as principal obligors with Kay to pay the bill. Mrs. Huggins alone testified in support of the contention that Williams & Gray bound themselves primarily for the bill, and each of them deny positively any such agreement on their part. The judgment of the lower court, on this claim, will have to be reversed.

#### Claim of J. A. Connell.

This defendant's account is as follows:

| | |
|---|---|
| 92 sacks cement | $56.12 |
| 11 pcs. 3x10–22 (lbr.) | 44.17 |
| Total | $100.29 |

Plaintiff admits the correctness of this account in part. The account filed by them, covering debits and credits, verified by testimony of Mr. Gray, is as follows:

| | | |
|---|---|---|
| Dr. | | |
| 74 sacks cement | $45.14 | |
| 10 pcs. 3x10–22 | 40.15 | $85.29 |
| Cr. | | |
| Various items amounting to | | $28.94 |
| Balance | | $56.35 |

Counsel admits this amount is due by plaintiff, and we think it lienable.

#### Claim of J. C. Moreland.

This account, as recorded, is made up of four different items:

| | |
|---|---|
| Oil and gas furnished C. E. Kay, subcontractor | $93.34 |
| Goods and material furnished one Bill Brantley | $18.39 |
| For oil and mdse. furnished S. H. Methvin | $17.54 |
| Gravel tickets issued by contractor | $ 3.15 |
| Total | $132.42 |

Plaintiff objected to the introduction of any evidence to prove this account for the reason "that there was no itemized account filed, sworn to or served"; that the claim shows on its face on the second item that it is to be furnished Bill Brantley, and no itemized statement and no transfer or subrogation of Bill

Brantley. The next is for merchandise furnished S. H. Methvin, no itemized statement served, not a transfer or subrogation whatsoever, and merchandise furnished Methvin would not be binding upon the plaintiff. The items being for gravel tickets, then not being itemized or recorded, or furnished to the plaintiff is inadmissible in evidence."

The objection was overruled by the lower court.

Section 3 of Act No. 271 of 1926 (amending section 2 of Act No. 224 of 1918) does not require that the claimant should make up and have recorded an itemized statement of the amount due him by the contractor in order to preserve his rights against the contract price for the particular improvement, but says that any time after the maturity of his claim, he may file with the authority having the work done, and have recorded in the office of the recorder of mortgages, wherein the work is situated, "a sworn statement of the amount due him," which, when so done, shall serve to preserve his rights. The requirement of the act is met if the statement is sufficient in detail or substance to give notice of the nature and character of the indebtedness sought to be enforced against the price of the improvements.

The declaration in the sworn and recorded statement by Moreland that he supplied C. E. Kay, subcontractor, with gas and oil to the amount of $93.34, and that the same was used by him on said highway, meets the legal requirements. Included in this account appear the following items, which are clearly not lienable: Cigarettes, $1.85; sugar, $.10; matches $.05; gravel tickets, $3.15; and care of mules $3—a total of $8.15. Deducting this amount from Moreland's own account leaves a balance of $85.19, due for gas and oil, which is lienable against the unpaid part of the contract price of the work.

The evidence concerning the Brantley and Methvin accounts, claimed to be owned by Moreland, is meager. No detailed accounts were filed in evidence and the right of Moreland to assert ownership thereto does not clearly appear. It is not shown to any extent that the articles making up these accounts went into the construction of the highway or bridges thereon, nor that the oil furnished to Methvin was consumed by any machine used thereon. These two items will have to be rejected.

Prior to Act No. 271 of 1926, amending Act No. 224 of 1918, it was held that oil and gas sold for use of trucks and other machines used in the hauling and spreading of gravel on a highway did not come within the provisions of the former act. Red River Const. Co. v. Pierce Petr. Corp., 165 La. 565, 115 So. 752; State v. Miller, 169 La. 914, 126 So. 422; State v. Smith, 167 La. 301, 119 So. 56.

But under the 1926 amendment it seems

clear that these two indispensable factors in the operation of trucks and other like machines, used in constructing a highway or bridge, are on same footing as the material which actually goes into and forms a permanent part of the finished improvement. The amendment of 1926, referring to lienable claims, pertinent to the issue being considered, reads as follows: " * * * or any person, firm, corporation, association of persons or partnership to whom any money shall be due on account of having furnished material or supplies for use in any machine used in the construction, erection, alteration or repair of any such building, road, street or other work of improvement. * * * "

While defendant testifies on direct examination that all of his account was due and unpaid, on cross-examination he admitted a credit of $61.10 had been omitted therefrom. This credit reduces the balance due him to $24.09, which is lienable against the balance due Williams & Gray by the highway commission on the road project.

### Claim of Wrought Iron Range Company.

■ A. F. Davis, a blacksmith, did repair work to the harness, vehicles, plows, etc., of G. A. Shows, a subcontractor of Williams & Gray, to the amount of $58.75. Davis assigned his account to this range company, which had it recorded in the mortgage records. It is clear no part of this account comes within the statute, and cannot be maintained as a lien against the road contract price. Murphy Iron Works Co. v. U. S. Fidelity & Guaranty Co., 169 La. 163, 124 So. 768, sustains this holding.

### Claim of W. M. Smith.

This account is charged against C. E. Kay and is made up entirely of sales of oil, gas, car and truck supplies, parts, and accessories, excepting the following:

| | |
|---|---|
| Drinks | $ .25 |
| Turpentine | .10 |
| Cash | 18.00 |
| Cigarettes | 3.25 |
| Nails | .10 |
| Cheese, salt | .25 |
| Bread | .20 |
| | $22.15 |

This leaves a balance of $123.93.

Mr. Smith testified that Mr. Williams brought Mr. Kay to his place of business and said he "was going to work and wanted me to supply him with gas and oil" and "they would see that it was paid." He stated that the gas and oil and accessories were used by the trucks and concrete mixers employed in building the road and bridges, and hauling material therefor. His account was objected to on same grounds urged against the Moreland account, viz., that it was not item-

ized when recorded. Our ruling on that account will also apply to this one.

W. H. Williams denied he authorized Smith to sell any goods to Kay and charge to plaintiff partnership. Gray says he instructed Smith to sell Kay nothing without a special order from the firm. This evidence disproves any personal obligation on part of the plaintiff to pay any part of this account. Certainly the evidence does not fix any responsibility on plaintiff as principal to pay the indebtedness of Kay to Smith.

Plaintiff does not contend that the gas, oil, and supplies on this account were not used in any machine of Kay used in the construction of the road and bridges, while Smith is positive such use was made of them. Under the 1926 amendment, quoted above, we think this account to the amount of $123.93 secured by lien on the contract price of the road.

For the reasons assigned herein, the judgment of the lower court is hereby amended in the following particulars:

(1) By reducing the lienable part of the account of W. M. Smith to $123.93, with 5 per cent. per annum interest from January 1, 1931.

(2) By reducing the lienable part of the account of John C. Moreland to $24.09, with 5 per cent. per annum interest from March 1. 1931.

(3) By rejecting the account of A. J. Huggins in full as not being lienable, and holding that plaintiff (Williams & Gray) is bound as principal for the payment of $147.87 thereof; and there is now judgment on the reconventional demand of defendant, in his favor. and against the ordinary partnership of Williams & Gray for said amount, with 5 per cent. per annum interest from August 1, 1930, and against Wilson H. Williams and Mrs. T. W. Gray, administratrix of the succession of T. W. Gray, deceased, jointly, for said amount.

(4) By reducing the account of J. A. McConnell to $56.35 with 5 per cent. interest from April 22, 1931, and holding same lienable against the contract price of the highway project 178–C.

The judgment of the lower court, for the reasons herein assigned, as to the claims of G. W. Huggins, D. W. Stewart, and Wrought Iron Range Company, is hereby annulled. avoided, and reversed, and there is now judgment in favor of plaintiff decreeing none of said claims lienable against the contract price of highway project 178–C, and the inscription thereof in the mortgage records of Red River parish is hereby ordered canceled and erased.

Costs incurred in connection with the claims of G. W. Huggins, D. W. Stewart, and Wrought Iron Range Company are hereby assessed against them, respectively. Costs

incurred in connection with claims of other defendants are hereby assessed against plaintiff.

The judgment appealed from, except in the respects hereby amended or reversed, is affirmed.