The plaintiff lumber company alleges in its petition that it sold and delivered to the defendant, Ludeau, doing business under the name of Ludeau's Lumber Yard, certain bills of lumber on which there is a balance due of $705.93 per the statement of account annexed to the petition. The suit is to recover this alleged balance due with legal interest thereon from January 17, 1940.
The statement annexed to the petition shows various items of lumber sold to the defendant from August 27, 1938 to January 17, 1940, but the statement also shows that all of these items were paid, except the last two items charged under date of January 13th and 17th, 1940, for $399 and $306.93, respectively. These last two items are the only ones involved in this suit. All of the other items shown on the statement were fully paid before the end of 1938 and can have nothing to do with this suit.
The defendant denied that he owes plaintiff the amount claimed, or any amount whatever, and denies that he purchased from the plaintiff company the lumber making up the two items on which the suit is based. He avers that in January, 1940, he purchased from R.E. Morgan, operating under the name of Morgan Lumber Trucking Company, of Natalbany and Hammond, Louisiana, a certain lot of lumber, the same lumber for which plaintiff has brought this suit; that he paid said Morgan Lumber Trucking Company (hereafter called Morgan) for the said lumber on January 23, 1940, the sum of $704.71; that he had no dealings with and bought no lumber from the Wax Lumber Company (hereafter called Wax), plaintiff in this suit.
The trial judge rendered a judgment in favor of the defendant, rejecting the demands of plaintiff, from which judgment the latter has appealed.
The facts show that Ludeau, the defendant, gave an order for the lumber, the price of which is involved in this suit, to Mr. C.T. Montgomery, a lumber commission salesman, and the order was taken by Montgomery on prices listed by Morgan. The order for the lumber was sent to Morgan by the salesman who had previously sold lumber for and placed orders with Morgan. The latter did not manufacture lumber but operated a lumber yard, and when he received an order for lumber that he did not have in stock, he would secure the lumber from saw mills around the country and haul the lumber to the customer either from his yard or from the mill with his trucks which he operated in a general trucking business in addition to the lumber business.
When Morgan received the order for this lumber purchased by defendant, he secured the lumber from Wax, and the latter delivered the lumber to Ludeau directly from its mill at Woodville, Mississippi. However, Morgan sent his trucks and drivers to deliver the lumber to the defendant after procuring it from the Wax mill as had been done on previous occasions. Morgan's truck drivers receipted the Wax company for each load of lumber, and triplicates of these dray receipts printed on headings of the Wax company showing that the lumber came from the mill of that company were delivered to Ludeau or his employees when these loads of lumber were received at his yard. Wax also sent invoices of the lumber to the defendant showing the pieces, sizes and number of feet delivered and the price *Page 159 
charged per thousand. These invoices had printed on them the name of the Wax Lumber Company, Inc.
On January 19, 1940, just after the lumber had been delivered, the defendant wrote a letter to Morgan stating that he had been getting invoices from Wax, "and inasmuch as we have made a deal with you (Morgan), I am wondering at this time if we should send remittance to you or to the Wax Lumber Co.". Defendant also called to the attention of Morgan in that letter the fact that some of the lumber in the invoices received from Wax was charged at a higher price than that which he understood Morgan had agreed to sell the lumber. This indicates clearly that the defendant understood, as he had reason to understand from the transaction which he made, that he purchased the lumber from Morgan and considered him his creditor, but was in some doubt as to whether he should remit to Morgan or to Wax.
Just as soon as Morgan received this letter from defendant, he called his office and advised defendant's office man that he (Morgan) had not assigned the order to Wax or any one else, and advised defendant that he would send a man over to collect for the price of the lumber. Neither defendant nor Morgan advised Wax of the letter or its contents. On January 23, 1940, Morgan made out a statement for the bill of lumber showing a total price of $760.93 and sent one of his men over to defendant's place to collect the bill. After making a deduction for cash, defendant's office man made out a check to Montgomery for his commission and issued another check to Morgan for the balance of $704.71.
Later Wax made demand on defendant for payment of this same lumber bill on the ground that Morgan had turned the order over to it to fill, and the lumber had been delivered to Ludeau from its mill and invoices furnished him showing that Wax and not Morgan had sold and delivered the lumber. On Ludeau's refusal to pay for the lumber a second time, Wax filed this suit.
There is considerable testimony in the record relative to a note which one of Morgan's men is supposed to have written Wax on January 9, 1940, just before Wax began delivering the lumber to Morgan's truck drivers to be delivered by them to Ludeau's lumber yard. The note purports to be signed by one Worsham, brother-in-law and an employee of Morgan, and is addressed to Wax, requesting him to furnish one of Morgan's truck drivers with some money and a room, and asks Wax to let the driver have the lumber for the Ludeau order given to Morgan by Montgomery and concludes by stating, "and we are turning it (the order) over to you". Worsham denies signing this note, but we are convinced that if he did not sign it, Morgan and his employees made arrangements with Wax to furnish the lumber for this order along the lines indicated in the note.
Conceding, however, that the contents of this note were authorized by Morgan, there is no assignment or transfer of the order shown. All that the arrangement could be held to mean was a request on the part of Morgan to Wax to fill the order for his account. There is no indication that Morgan was assigning or transferring the order to Wax whereby Wax would become the creditor of Ludeau after the order was filled. Morgan's trucks got the lumber from Wax and delivered it to Ludeau under the order which the latter had given Morgan.
Moreover, neither Wax nor Morgan ever gave Ludeau any notice of any intention to assign or transfer the order from Morgan to Wax. Before the debtor can be affected by the transfer of a debt or claim by his creditor to another, the debtor must be given notice of such a transfer. Civ. Code, art. 2643.
This notice may be given either verbally or in writing, but in any event, the notice must be such as will fully inform the debtor that his creditor has completely divested himself of all his rights to the debt or claim assigned. Folse v. Dale et al.,197 La. 511, 2 So.2d 6.
And if, previous to notice having been given the debtor of the transfer of the debt, he pays it to his creditor, the debtor is discharged. There was no notice given by Wax to the defendant that the former had acquired this order by a transfer from Morgan, assuming that there was a transfer between these two parties. Morgan remained the creditor of the defendant and the latter had a right to pay Morgan the debt and when he did so, he was fully discharged from the debt. Civ. Code, art. 2644; Williams Gray v. Stewart et al., La.App., 147 So. 103. The mere sending of the invoices by Wax to Ludeau did not have the effect of notifying the latter that *Page 160 
the order had been assigned by Morgan to Wax.
The point is made by defendant's counsel that, as the plaintiff alleged in its petition that it sold the lumber to the defendant and made no mention of an assignment or transfer of the order from Morgan, evidence seeking to show such an assignment was beyond the pleadings and therefore inadmissible. Objection was made to such evidence, but it was admitted subject to the objection. There is considerable merit in the objection, but we have concluded that the ends of justice will be best served by disregarding the objection and deciding the case on the merits.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of appellant in both courts.