**UNITED STATES of America to the Use of Charles BETTS, trading as Betts and Brothers, Plaintiff,**

**v.**

**CONTINENTAL CASUALTY COMPANY and Acme Missiles & Construction Corporation, Defendants.**

**Civ. A. No. 62–435.**

United States District Court
W. D. Pennsylvania.

Jan. 10, 1964.

William F. Donatelli, Pittsburgh, Pa., for plaintiff.

Frank J. Gaffney, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

This case was tried without a jury. It was brought by virtue of the provisions contained in the Miller Act of August 24, 1935, c. 642 § 2, 49 Stat. 794, 40 U.S.C.A. § 270b(a) and (b), as amended.[1]

---

1. "(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judg-

The defendant Acme Missiles & Construction Corporation (Acme) entered into a written contract in May, 1961 with the United States Army Corps of Engineers for the improvement of two missile sites near Dorseyville and Coraopolis, municipalities in Allegheny County, Pennsylvania. On June 9, 1961, Acme by a written contract sublet certain masonry work in connection with the improvement of these missile sites to David R. Murphy Construction Company (Murphy). Murphy agreed to furnish all labor, tools, equipment and shop drawings for the complete installation of all masonry work, blocks and bricks, for generator buildings additions and Hipar buildings, including bond beams, concrete lintels and sills in accordance with the contract drawings. On June 16, 1961, Acme entered into a written contract with Murphy for the furnishing of all concrete work including the erecting of all form work, the placing of the concrete and the performing of all necessary work in accordance with the specifications and drawings.

On or about May 29, 1961, defendant Continental Casualty Company (Surety) delivered to the United States Army Corps of Engineers a labor and materialman bond guaranteeing payment to all persons supplying labor and material for these two improvements.

Thereafter, Murphy made arrangements with the use-plaintiff Charles Betts, trading as Betts and Brothers (Betts) for a temporary office and for the furnishing of such lumber, nails, tools and equipment as would be required in the performance of the work which Murphy had undertaken for Acme. Pursuant to such arrangements, Betts furnished the material Murphy requested from July 2, 1961 up to September 30, 1961.

Wage and salary payments were made by Acme to all Murphy employees on the job by a check for the total amount made payable to Murphy, whom Acme's representative required to endorse. The proceeds were then turned over to the Acme representative who, in turn, made payments to the individual men. Murphy received no money with which to make payment to Betts. The invoices for all materials delivered to the sites by Betts were accumulated by an employee on the job and sent to Acme in New York.

Because Betts was not paid for the materials which he furnished to Murphy at these two sites, this action was instituted for the recovery of the total sum due on the various invoices.

The defendants deny any obligation because they contend: (1) the materials were not in effect delivered; (2) Betts

ment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the

contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit."

was paid by Murphy; (3) the materials furnished were not within the category authorizing payment under the Miller Act; (4) Murphy and Betts were partners; (5) the defendants are absolved from any liability because the required notice was not given, and (6) the jurisdictional amount of $10,000 is lacking.

As for the delivery of materials, Acme's witness, its Secretary-Treasurer and chief accounting officer, Schachter, admitted receipt of the invoices but ignored these because he did not receive the daily reports in accordance with his instructions. The evidence is preponderantly in favor of the use-plaintiff to the effect that the material was supplied by Betts and was received and signed for on the jobs. The evidence, again, is abundantly clear that Murphy received no money with which to make payment for the material procured from Betts.

■ All the lumber, tools and hardware supplied by Betts were required and used in the performance of Acme's work at the two sites, and were in fact shown to be indispensable to the prosecution of the work. This brought the subject-matter within the scope of the Miller Act. The fact that some portions of the material might have been re-usable would, under these circumstances, not avoid a recovery of payment. Glassell-Taylor Co. v. Magnolia Petroleum Co., (C.A.La., 1946), 153 F.2d 527; Fourt v. U. S. for use of Westinghouse Electric Supply Co., (C.A.Okl., 1956), 235 F.2d 433.

■ Were Murphy and Betts partners? As the work went on, it proved that Murphy was not in good financial condition and that the creditors might not be paid if the handling of the finances were left to Murphy. Accordingly, a representative of Acme, after threatening him with jail and other persuasions, insisted that Murphy execute a certain affidavit (Exhibit A-P-1) in order to assure payment of Murphy's creditors. A sworn document was prepared by a Justice of the Peace at the request of Acme's representative. This document, already referred to as Exhibit A-P-1, is a statement of a confusion of facts as shown by the evidence. It purports to be a document of proprietary significance, but legally, it crosses into contradiction and deficiency. It agrees to a president and secretary-treasurer. It disposes of voting rights and interests. Except by inference, it does not fix liabilities or provide for profits. It does not concern itself with subject-matter or legal compliance either as a partnership or as a corporation. The evidence shows no motivation in back of it on the part of either Murphy or Betts to convert themselves into a partnership or joint proprietary entity. From all of the evidence in this case, it is obvious that no partnership undertaking was intended or effected. It appears also from the evidence that Murphy was influenced by the will of Acme, even to the extent of placing some of its employees on his payroll.

Under all these circumstances, the evidence which the defendants adduced in connection with this affidavit purporting, as the defendants argue, to effectuate a partnership is unreliable and I can give it no weight. In addition to the affiadvit, the defendants inferred that Murphy and Betts had been related by marriage [2] and that this, too, bound them together. This latter contention is hardly worthy of any comment. The defendants produced nothing that would supply such coherence which would give it any value as evidence. The evidence as a whole points preponderantly to the conclusion that no partnership was created between Murphy and Betts. I, therefore, conclude that no partnership existed in which the use-plaintiff had any interests so far as the defendants are concerned.

2. Murphy was a step-brother of Betts's son-in-law.

The defendants also reject the notice given. This was a letter dated November 6, 1961, addressed to Acme by which the use-plaintiff demanded payment for the materials he had delivered to Murphy. The defendants object to this on the ground that "as of that time, the use-plaintiff was not such a supplier of materials as may bring an action under the Miller Act." There is no merit to this connection for the reasons already here stated. Also, the Act provides for the giving of notice within 90 days after the day on which the last labor was performed or materials furnished. The last materials were furnished by Betts on September 30, 1961. Notice was therefore proper.

Lastly, the defendants contend that jurisdiction is lacking in the court because the claim falls short of the $10,000 amount. Since the Act in § 270b(b) provides for the bringing of these actions in the United States District Court for any district in which the contract was performed and executed, and not elsewhere, *irrespective of the amount in controversy in such suit*, the defendants' objection to amount jurisdiction is without merit.

The use-plaintiff here carried the burden of proof required of him for a recovery, but the defendants have offered nothing to reasonably shake that proof. The use-plaintiff's claim will accordingly be allowed.

### ORDER

AND NOW, TO-WIT, this 10th day of January, 1964, judgment is hereby entered for the sum of NINE THOUSAND ONE HUNDRED THIRTY-FOUR and 96/100 ($9,134.96) Dollars, together with interest at the rate of Six (6%) percent from August 9, 1961 in favor of the United States of America to the use of Charles Betts, trading as Betts and Brothers and against Continental Casualty Company and Acme Missiles & Construction Corporation, defendants.