472 So.2d 258 (1985)
JAVELER CONSTRUCTION COMPANY, INC.
v.
FEDERAL INSURANCE COMPANY.
No. CA 84 0703.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*259 Ralph K. Lee, New Iberia, for plaintiff-appellee Javeler Const. Co., Inc.
R. Bruce Macmurdo, Baton Rouge, for defendant-appellant Federal Ins. Co.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This action commenced as a suit in contract for the balance due to a subcontractor on a public work project. Made defendants were the State department that authorized the work, the general contractor for the work, the subcontractor of the general contractor with whom the plaintiff contracted and the surety of the general contractor. The plaintiff and the surety entered into a joint stipulation of facts. The plaintiff moved for summary judgment against the surety based on the facts stipulated. The district court granted summary judgment in favor of the plaintiff for $84,000, with legal interest thereon from date of judicial demand and awarded an attorney fee of 10% of the principal and interest. This suspensive appeal followed.

*260 FACTS
The parties stipulated the following facts:
1. The Louisiana Department of Transportation and Development (hereinafter `DOTD') entered into a written contract dated April 4, 1979, with Tobilar, Inc. (hereinafter `Tobilar'), under which Tobilar agreed to construct State Project Numbers 64-04-20 and XXX-XX-XX entitled the `Golden Meadow-Larose Highway (Section 1)' in Lafourche Parish for $10,713,135.79 in accordance with certain plans and specifications.
2. The contract between DOTD and Tobilar was bonded by a contractor's surety bond issued by Federal Insurance Company (hereinafter `Federal'), binding Tobilar and Federal in solido unto DOTD and all subcontractors and furnishers of materials and equipment in the full sum of $10,713,135.79 for all lienable claims under the Louisiana Public Works Act, La.R.S. 38:2241, et seq.
3. Tobilar and Mid-Gulf Construction Co., Inc. (hereinafter `Mid-Gulf') entered into a written subcontract dated April 17, 1979, in which Mid-Gulf agreed to perform on a turn-key basis all of Tobilar's obligations under Tobilar's contract with DOTD for the construction of State Project Numbers 64-04-20 and XXX-XX-XX.
4. Mid-Gulf entered into a written subcontract with Javeler Construction Co., Inc. (hereinafter `Javeler'), dated February 13, 1980, in which Javeler agreed to perform sand unloading operations in connection with State Project Numbers 64-04-20 and XXX-XX-XX. The subcontract called for Javeler to unload approximately 1,168,767 cubic yards of sand at 37 cents per cubic yard, and also provided that Javeler was to be paid a monthly minimum of $40,000.00 regardless the number of cubic yards of sand actually unloaded.
5. Javeler performed sand unloading operations from mid-February of 1980 through October 22, 1980, under the subcontract with Mid-Gulf. The sand operations consisted of Javeler using its dragline to unload sand from barges owned or chartered by Mid-Gulf and placing the sand in a pile on the ground at the unloading site, which was located several miles from State Project Numbers 64-04-20 and XXX-XX-XX. Mid-Gulf loaded the sand into trucks owned or operated by Mid-Gulf, and hauled the sand from the unloading site to the road project.
6. Javeler invoiced Mid-Gulf, and was paid by Mid-Gulf, $38,500.00 for the month of February, which included a $20,000.00 mobilization charge as stipulated in the contract between Mid-Gulf and Javeler, and $40,000.00 per month for the months of March, April, May, June, and July of 1980. Javeler also invoiced Mid-Gulf $40,000.00 per month for the months of August, September, and October of 1980, of which Mid-Gulf only paid $36,000.00, leaving $84,000.00 unpaid.
7. The subcontract between Javeler and Mid-Gulf was terminated by Mid-Gulf on or about October 21, 1980.
8. In the performance of the sand unloading subcontract with Mid-Gulf, Javeler unloaded slightly less than 400,000 cubic yards of sand. Javeler did not unload enough sand during any month of operations to invoice Mid-Gulf more than the minimum charge of $40,000.00, which was due according to the terms of the contract regardless of the amount of sand unloaded.
9. Javeler was paid a total of $254,500.00 by Mid-Gulf for unloading sand, which amounts to approximately 64 cents for each cubic yard of sand unloaded by Javeler.
10. Javeler made demand in writing upon DOTD, Tobilar, Mid-Gulf, and Federal for $91,474.34 on January 6, 1981.
11. Javeler recorded a sworn statement of the amount due in the mortgage records of Lafourche Parish on February 26, 1981, claiming $84,000.00 as the amount due.

*261 IS THE WORK JAVELER PERFORMED COVERED BY FEDERAL'S STATUTORY BOND?
Federal contends the work performed by Javeler is not covered under the Louisiana Public Contracts Law, La.R.S. 38:2241 et seq., because the work was not performed on the construction site and was not performed directly on the public work, the work merely involved an intermediate act of transportation and the work was done by manned rental equipment.
The district court gave the following rationale for finding the claim was covered by Federal's bond:
In order for Javeler to hold Federal liable under R.S. 38:2241, it is a prerequisite either that there be privity of contract between Javeler and the general contractor, or that Javeler furnished work, labor or materials to a contractor or subcontractor. Javeler concedes that privity of contract does not exist. The Court finds that the contract between Javeler and Mid-Gulf was one for work done or labor performed on the state project and that Javeler, having performed under the contract, is therefore a creditor with a lienable claim for the following reasons.
The Court believes that the unloading operation performed by Javeler is a `work done' within the meaning of the Public Works Act, and not merely the lease or rental of equipment. There is a distinction between the rental of machinery or equipment and hiring a subcontractor in the business of providing unloading operations to perform a necessary element of the project which would otherwise have been performed by Mid-Gulf. The facts of this case indicate that Javeler contracted to furnish all labor, equipment, supervision, material and supplies for performance of sand unloading operations. Javeler performed these operations for approximately eight months using its dragline to unload sand from barges owned or chartered by Mid-Gulf and placing the sand in a pile on the ground at the unloading site....
The Court further finds that the `work done' by Javeler was in direct relation to the construction of Section 1 of the Golden Meadow-Larose Highway in accordance with the test set forth in the Coating Specialist [Coating Specialists, Inc. v. Pat Caffey Contractor, Inc., 194 So.2d 380 (La.App. 4th Cir.1967), writ refused, 250 La. 633, 197 So.2d 652 (1967)] case cited by both Javeler and Federal. By contracting with Tobilar, Mid-Gulf agreed to perform all duties necessary to construct the highway. One of the components of the project, the unloading of sand to be used in the construction, was subcontracted to Javeler. Without the performance of Javeler, the construction could not have been accomplished because sand would not have been available when Mid-Gulf required it to be hauled to the job site. As the Coating Specialist case held, a claimant need not have performed work at the job site. Therefore, Javeler is entitled to a privilege or lien under the Public Works Act. Summary judgment in favor of Javeler will be granted.
The Louisiana Public Contracts Law requires the contractor for the construction of a public work to furnish a surety for the faithful performance of the contract. La. R.S. 38:2241. Under La.R.S. 38:2241, those not enjoying contractual privity with the general contractor on a public work are given a cause of action against the general contractor and his surety as provided for in the statute. If the claim is properly recorded and the governing authority authorizing the work makes payments to the general contractor without deducting the amount of the claim, the governing authority may also be liable to certain persons for the claim. La.R.S. 38:2242. Since the cause of action is created by statute, only those claimants for whose benefit a surety bond is required by La.R.S. 38:2241 are entitled to recover against the contractor and surety.
At the time Javeler performed its work, La.R.S. 38:2241 provided that a surety bond must be furnished for "all work *262 done, labor performed, or material or supplies furnished for the construction, alteration, or repair of any public works, or for transportation and delivery of such materials or supplies to the site of the job by a for hire carrier, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works." This statutory provision must be strictly construed. Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931); Adams v. Magnolia Construction Co., Inc., 431 So.2d 38 (La.App. 1st Cir. 1983). Otherwise, this law should be construed pursuant to the usual rules of statutory construction. La.C.C. art. 13 et seq.
The plain language of this statutory provision shows the surety bond must cover the following: (1) all work done for the construction; (2) all labor performed for the construction; (3) all material or supplies furnished for the construction; (4) for transportation and delivery of materials or supplies to the site of the job by a for hire carrier; and (5) for furnishing materials or supplies for use in machines used in the construction. Provisions (3) and (5) are not applicable because Javeler did not furnish the sand and the sand was not used in machines.
Provisions (1) and (2) are also not applicable herein. It is well settled in the jurisprudence that work done or labor performed is not covered unless it has gone directly into the construction project.[1]Long Bell Lumber Co. v. S.D. Carr Const. Co., 172 La. 182, 133 So. 438 (1931); John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768 (1929). The labor performed and work done by Javeler did not go directly into the road construction project and did not alter the sand. Javeler merely moved sand off of a barge onto the bank of a waterway at a place away from the construction site.
The cases of Harvey Canal Towing Co., Inc. v. Gulf South Dredging Co., Inc., 345 So.2d 567 (La.App. 4th Cir.1977), Super Construction Co., Inc. v. New Orleans Levee Board, 286 So.2d 134 (La.App. 4th Cir.1973), writ denied, 288 So.2d 643 (La. 1974) and Coating Specialists, Inc. v. Pat Caffey Contractor, Inc., 194 So.2d 380 (La. App. 4th Cir.1967), writ refused, 250 La. 633, 197 So.2d 652 (1967), cited by the trial court are distinguishable on their facts. In Harvey Canal Towing, 345 So.2d at 569, the court found as fact the work done by the plaintiff was towing services and this work was "a certain portion of the work necessary to complete the public work." In Super Construction, the materials and labor of the plaintiff were used directly for construction on a portion of a levee. In Coating Specialists, the plaintiff sandblasted component parts of the construction and recoated them with specified materials. The component parts were then incorporated directly into the structure. The court held that the fact that the labor was performed off of the construction site did not defeat the claim because the labor done and materials furnished were incorporated into the structure.
By Act 59 of 1960, La.R.S. 38:2242 was amended to specifically exclude "persons to whom money is due for the lease or rental of movable property".[2] Under this provision, it was important to determine whether the claimant was a subcontractor or merely the furnisher (lessor) of labor and equipment, because the latter was excluded from the benefits of the statute. Ville Platte Concrete Service, Inc. v. Western Casualty & Surety Company, 399 So.2d 1320 (La.App. 3rd Cir.1981); Mayeaux v. Lamco, Inc., 180 So.2d 425 (La.App. 1st Cir.1965); Martinolich v. Albert, *263 143 So.2d 745 (La.App. 1st Cir.1962). However, by Act 344 of 1975, provision (4) was added to the surety bond requirements of La.R.S. 38:2241 giving claimants who qualified a cause of action against the contractor and surety.[3] Provision (4) requires the surety bond to cover costs "for transportation and delivery of such materials or supplies to the site of the job by a for hire carrier".[4] We are unable to find any jurisprudence which interprets this provision.
Federal's argument that the work was performed off of the job site is not pertinent to provision (4). Transportation of materials to the job site obviously contemplates work off of the job site. Federal's argument that the work was done by manned rental equipment is based on the equipment rental exclusion (Act 59 of 1960) of La.R.S. 38:2242. This argument cannot prevail because Act 344 of 1975 gives a cause of action under 38:2241 against the general contractor and its surety to qualified claimants, whereas Act 59 of 1960 excluded rental equipment claims from claims against the governing authority under 38:2242. (Even if 38:2241 and 38:2242 are construed as being mutually inclusive, Act 344 of 1975 must be read in pari materia with Act 59 of 1960 and, thus, Act 344 would be an exception to Act 59. La. C.C. art. 17.) Javeler has a cause of action against Federal if it properly qualifies as a claimant under provision (4).
Javeler is a carrier for hire in the purview of provision (4). Javeler was paid by measure with a guaranteed minimum to move the sand from barges to the shore. This work by Javeler transported the sand from one place to another. However, Federal contends Javeler is not covered by the surety bond because it performed an intermediate act of transportation and did not transport and deliver the sand to the site of the job. Can each transporter in a chain of transporters from a protected materialman[5] claim against the surety bond, or is the cause of action limited only to the transporter in the chain of transportation who actually delivers the materials or supplies to the job site? All acts of the legislature must have titles indicative of their object. La. Const. of 1974, art. III, § 15(A). The title of Act 344 of 1975 provides as follows:
To amend and reenact Section 2241 of Title 38 of the Louisiana Revised Statutes of 1950 relative to the claims of materialmen and laborers on public works to include those who transport materials for use and construction on the job.
Although La.R.S. 38:2241 (and Act 344) must be strictly construed, such construction must be a reasonable one. The purpose of Act 344 can be determined from its text and title. Slagle-Johnson Lumber Company, Inc. v. Landis Construction Company, Inc., 379 So.2d 479, 485-486 (La.1980). We believe a reasonable strict construction of provision (4) requires that all transporters in the transportation chain from the protected materialman to the job site are covered by the surety bond. Javeler falls into this category under the facts of this case.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
COLE, J., concurs in the result. In addition to the basis for affirmation herein, I believe the trial court was correct in holding the unloading operation performed by *264 Javeler to be "work done" which was in direct relation to the construction project, thereby affording the relief sought.
NOTES
[1] Material and supplies are covered only if they become a component part of the completed structure or are consumed in the work on the structure. Slagle-Johnson Lumber Company, Inc. v. Landis Construction Company, Inc., 379 So.2d 479 (La.1980).
[2] By Act 703 of 1984, La.R.S. 38:2242 was amended to allow claims by lessors of movables for "rentals accruing during the time the movable is located at the site of the immovable for use in a work."
[3] It should be noted La.R.S. 38:2242 was not amended to give its benefits to Act 344 of 1975 claimants. Since the portion of the suit before us is against the surety and not against the governing authority, we need not pass on this problem.
[4] The phrase "such materials or supplies" applies to items (such as the sand in the instant case which was used for the foundation of the road) defined in footnote 1.
[5] A materialman to a materialman is not entitled to the statutory benefits of the Louisiana Public Contracts Law. Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975); Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La.App. 2nd Cir.1960).