MARVIN, Chief Judge.
In this action for recognition of a lien under the Public Works Law, the supplier of steel, plaintiff AFCO, to a fabricator of the steel for the structure, A.M. Steel, appeals a judgment which rejects AFCO’s demands, effectively finding that the fabricator was a supplier of material for the job rather than a subcontractor. AFCO’s motion for summary judgment was denied and the exception of no right of action against AFCO was sustained and its demands rejected after a hearing.
One who simply sells materials to another who then fabricates and sells the fabricated material to a public works contractor for inclusion into the public work does not enjoy lien-claimant status under the law. LRS 38:2241, et seq. Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975); Slagle-Johnson Lumber v. Landis Const. Co., 379 So.2d 479 (La.1980).
We affirm.
FACTS
The general contractor for the construction of the Bossier City Civic Center, Tudor Construction Company, contracted by a purchase order agreement for A.M. Steel to supply the project's fabricated structural steel. Tudor subcontracted with Advance Constructors, Inc. to erect the steel structure for the building on the jobsite. The raw steel for the fabrication was sold by AFCO to A.M. Steel in Batesville, Arkansas.
The factual-legal issue is whether AFCO’s vendee, A.M. Steel, should be characterized as a materialman or as a “subcontractor” performing work or labor.
Advance Constructors and Tudor early discovered that the holes drilled in some steel fabricated by A.M. Steel did not correctly align or coincide with other parts of the steel structure. Estimates of the fabrication errors ranged from less than five percent to ten percent. Evidence of the cause conflicted. Deposition testimony also suggested that the basic steel structure was out of plumb. A.M. Steel was obligated under its purchase order contract to correct any fabrication errors.
When the errors were discovered, A.M. Steel and Tudor agreed that Tudor would *700 withhold periodical payments to A.M. Steel until A.M. Steel corrected the errors. Considering the number of errors, A.M. Steel decided that it would be less costly to send its crew to the jobsite to make corrections than either to continue paying Advance to make the corrections or to return the steel to Arkansas for refabrication and redelivery to the jobsite. Advance Constructors and other steel erectors were said to charge twice the standard hourly rate for corrective work.
At the jobsite A.M. Steel’s employees corrected misfabricated steel on the ground as well as in the structure which Advance Constructors had partially erected. Some of the misfabricated steel was removed from the structure and replaced therein after correction by A.M. Steel at the job-site. A.M. Steel chose whether to pay Advance Constructors to remove from the structure and replace a steel member after correction.
Advance did not delegate to A.M. Steel any part of its contractual obligation to erect the structure. Neither Advance nor Tudor exercised supervision or control over A.M. Steel’s employees at the jobsite or elsewhere.
AFCO emphasizes that the last work done by A.M. Steel at the jobsite consisted of installing steel beams for a staircase in the structure. A.M. Steel’s employee, Mil-ligan, explained what corrective work A.M. Steel did and how it was done. From specifications and plans furnished by the general contractor, Tudor, A.M. Steel made its own shop drawings for fabrication of the raw steel it purchased from AFCO. No drawings were furnished AFCO. While A.M. Steel had worked [elsewhere] in the past as an “erector and supplier ... on this job [in Bossier City] we were just supplying steel. We were not doing the erection,” Milligan said.
Another A.M. Steel employee, Charles Bristow, Jr., who also worked in Bossier City on the project, explained that he had to bring “longways” steel beams from Batesville, Arkansas, and install them as “stair steel” so that “a stairway that wasn’t on the original drawing could be put there.” Bristow said he did not know whether the staircase was shown on the prints [apparently the owner’s plans and specifications furnished to A.M. Steel], but the staircase beams were “not shown” on the prints from which he and others worked [apparently A.M. Steel’s fabrication drawings] to fabricate the required steel members. Bristow, like Milligan, said
I’ve done erection [work] ... You know. I didn’t do any of that kind of work in Bossier City.
Notwithstanding A.M. Steel’s emphasis about the staircase, we cannot conclude from the totality of the record that A.M. Steel was doing other than corrective work on the Bossier City project.
Tudor paid A.M. Steel, but A.M. Steel failed to pay AFCO, its supplier, for the raw steel, and failed to pay Tudor for correcting fabrication errors and for shortages in some fabricated material.
For the price of the raw steel sold to A.M. Steel, AFCO made amicable demand on Tudor and its surety for the project. Tudor refused to pay the claim, contending that AFCO was a supplier’s supplier and therefore not entitled to a lien under the Public Works Act. To AFCO’s action for recognition and satisfaction of its lien under LRS 38:2241, et seq., Tudor and USF & G filed exceptions of no cause and no right of action, and AFCO filed a motion for summary judgment.
After a hearing, the trial court sustained Tudor’s exceptions of no cause and no right of action and denied AFCO’s motion for summary judgment, finding that the work performed by A.M. Steel at the jobsite was corrective work and did not transform its character from materialman to subcontractor. The court reasoned that A.M. Steel did the corrective work at the jobsite rather than its own place of business to lessen its expense and that A.M. Steel was neither contractually obligated nor delegated the responsibility by Advance to erect steel and did not perform steel erection work.
Under this record, A.M. Steel was correctly characterized as a materialman-fabri-cator and AFCO was correctly characterized factually as a supplier to A.M. Steel.
*701 THE LAW
AFCO agrees that the denomination of the contract between Tudor and A.M. Steel as a Purchase Order is not determinative of A.M. Steel’s status. AFCO argues that the actions of A.M. Steel at the jobsite were sufficient to classify A.M. Steel a subcontractor, thereby entitling AFCO to lien claimant status.
For AFCO to be entitled to lien claimant status under the Public Works Act, LRS 38:2241 et seq., AFCO must demonstrate a contractual relationship between it and the general contractor or a subcontractor. The statute only embraces creditors of general contractors and subcontractors and not creditors of materialmen. Compare Thurman v. Star Electric Supply, Inc., and Slagle-Johnson Lumber v. Landis Const. Co., supra. LRS 38:2242.
Whether one is a subcontractor or a materialman must be resolved from essential factors of legal significance other than denomination as such by the general contractor. Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La.App. 2d Cir.1960), writ denied. There we explained that a materialman, as distinguished from a subcontractor, is one who contracts to furnish material for a building and who, unlike a subcontractor, has no corresponding responsibility or obligation to install or incorporate those materials into the building. The test is not whether one expends time and labor in producing the materials, but rather whether one furnishing materials thereafter performs any labor in attaching to, or incorporating the materials into, the building. There, as here, one who fabricated steel and did not engage in erection of the building was held to be a supplier or materialman rather than a subcontractor. There neither the general contractor nor the fabricator understood that the fabricator was to do anything more than furnish steel fabricated to the plans and specifications for the building.
The Heard test was applied in Thurman v. Star Electric Supply, Inc., supra. In Thurman, the plaintiff-subcontractor ordered materials from Star who purchased the required materials from several manufacturers, including Stagecraft. Star was found to be a materialman because it expended no labor in installing the materials into the project, rendering Stagecraft a supplier of material to a materialman. Beyond its direct contractual relationship with Star, Stagecraft argued that a contractual relationship existed between it and Thurman, the plaintiff-subcontractor, because Stagecraft rendered services to Thurman by supervising the installation of the equipment it had manufactured. Because Thurman had not delegated any of its responsibility for installation to Stagecraft, the court found no contractual relationship between Stagecraft and Thurman. As part of Stagecraft’s warranty against defects in its products, Stagecraft was obligated to see that the equipment it manufactured was correctly installed. The only labor performed by Stagecraft occurred when it hired and paid two of Thurman’s laborers to correct circuitry which was improperly wired when Stagecraft manufactured the equipment. These factors led the court to conclude that Stagecraft was a supplier without contractual relationship with Thurman and was not entitled to lien claimant status.
Here, A.M. Steel is like the Thurman manufacturer who hired and paid the laborers of Thurman to perform corrective work at the jobsite and who was not delegated any responsibility by the contractor or a subcontractor for the installation into the building of the materials it manufactured. A.M. Steel was responsible for correcting its fabrication errors, and the only labor it performed was corrective work at the job-site. We cannot say that the installation of beams by A.M. Steel into the steel staircase was anything more than corrective work, because A.M. Steel drew its own shop drawings from which all fabrication work was done. Any omission from its own fabrication plans or drawings cannot avail A.M. Steel or legally change its characterization. We also cannot say that the replacement of members, after correction, that ■ A.M. Steel had removed from the structure was anything more than work which it was obligated to correct.
*702 DECREE
Under this record, we find that the trial court judgment was legally-factually correct insofar as it denied AFCO’s motion for summary judgment and sustained the exception of no right of action against AFCO, rejecting its demands after a hearing.
At AFCO’s cost and in the respects mentioned, the judgment is
AFFIRMED.
SEXTON, J., concurs.